## PEOPLE v. PANKNIN.

1. CONSTITUTIONAL LAW—DOUBLE JEOPARDY—DISCHARGE ON PRELIMINARY EXAMINATION.

   A discharge of defendant by examining magistrate on preliminary examination is not a bar to further prosecution for same offense, because preliminary proceeding did not place defendant in jeopardy (US Const, Am 5; Mich Const 1908, art 1, § 14).

2. SAME—SEARCH AND SEIZURE—WITHOUT WARRANT.

   Search of room in which defendant was found and seizure of evidence found in room was lawful when done in conjunction with lawful arrest, and was not violation of constitutional rights of defendant (US Const Am 4, Const 1908, art 2, § 10).

3. ARREST—WITHOUT WARRANT—POLICEMAN.

   A policeman may arrest any person whom he suspects, on reasonable grounds, of having committed a felony, when he has

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 21 Am Jur 2d, Criminal Law § 177.
[2] 47 Am Jur, Searches and Seizures §§ 16, 54.
  Modern status of rule governing admissibility of evidence obtained by unlawful search and seizure. 50 ALR2d 531.
[3] 5 Am Jur 2d, Arrest § 25.
[4, 5] 5 Am Jur 2d, Arrest § 44 et seq.
[6–9] 47 Am Jur, Searches and Seizures § 19.
[10] 5 Am Jur 2d, Appeal and Error § 624.
[11] 5 Am Jur 2d, Appeal and Error § 776 et seq.
[12] 53 Am Jur, Trial § 486.
  Propriety and effect of prosecuting attorney's argument to jury indicating his belief or knowledge as to guilt of accused. 50 ALR 2d 766.
[13] 53 Am Jur, Trial § 506.
[14] 13 Am Jur 2d, Burglary § 50.
[15] 5 Am Jur 2d, Appeal and Error § 831.

reasonable cause to believe that a felony has been committed (CL 1948, § 764.15, subd [d]).

4. SAME—WITHOUT WARRANT—REASONABLE GROUNDS.

Policemen had reasonable grounds to suspect that defendant had committed the felony of breaking and entering in the nighttime when they found a jewelry store window had been broken in the nighttime and goods taken out of the window, found footprints with distinctive mark on heel in snow in front of the window, followed the footprints to a house in which defendant lived, and found wet shoes with same distinctive heel in defendant's room (CL 1948, § 750.110).

5. SAME—WITHOUT WARRANT—OBSERVATION LEGALLY MADE.

Policemen lawfully observed wet shoes with distinctive heel marks connecting defendant with felony of breaking and entering in the nighttime when they were in defendant's room pursuant to permission given by owner of house to enter and search (CL 1948, § 750.110).

6. SEARCHES AND SEIZURES—ARREST WITHOUT WARRANT—INCIDENTAL SEARCH—FRUITS OF CRIME—MEANS OF COMMISSION OR ESCAPE.

A reasonable search incidental to a lawful arrest for a crime may be made to reach the fruits of the crime, the means by which the crime was committed, or instruments calculated to effect escape from custody.

7. SAME—ARREST WITHOUT WARRANT—INCIDENTAL SEARCH—FRUITS OF CRIME.

A search, in which stolen jewelry was discovered, made incidental to an arrest on reasonable grounds, for suspecting defendant had committed felony of breaking and entering in the nighttime at jewelry store, *held,* proper (CL 1948, § 750.110).

8. SAME—ARREST WITHOUT WARRANT—INCIDENTAL SEARCH—MEANS OF COMMISSION.

A search, to discover a ball-peen hammer used to break a jewelry store window, made incidental to an arrest on reasonable grounds for felony of breaking and entering in the nighttime at a jewelry store, *held,* proper (CL 1948, § 750.110).

9. SAME—SEARCH INCIDENTAL TO ARREST—TIME OF SEARCH.

Whether formality of arrest preceded or followed incidental search for fruits of crime and means of commission was unimportant when policemen had reasonable grounds for arrest before search was made and suspected criminal was effectively in their custody at time of search.

10. APPEAL AND ERROR—ARGUMENT TO JURY—IMPROPER REMARKS—
    OBJECTIONS.
    Error on appeal cannot be assigned for improper remarks made
    by prosecutor in argument to jury when timely objection is
    not made and no request is made to instruct jury concerning
    the argument.

11. CRIMINAL LAW—IMPROPER ARGUMENT—PREJUDICE.
    Argument of prosecutor in which he implied that defendant had
    criminal mind and thought as criminals think, was not under
    the circumstances so prejudicial as to deprive defendant of
    fair trial.

12. SAME—IMPROPER REMARKS—OPINION OF PROSECUTOR.
    Statement of prosecutor in course of argument to jury that he
    was convinced of guilt of defendant was improper.

13. SAME—IMPROPER REMARKS—INSTRUCTION.
    Statement of prosecutor to jury that he was convinced of guilt
    of defendant, followed by prompt instruction by court that
    opinions of counsel have no bearing on case, *held,* not ground
    for reversal.

14. SAME—BREAKING AND ENTERING IN THE NIGHTTIME—EVIDENCE.
    Conviction of defendant of breaking and entering in the night-
    time, *held,* sustained by evidence showing that a jewelry store
    window was broken sometime between approximately 2:45
    and 3:30 a.m., and items there on display taken, that foot-
    prints with distinctive mark on heel were tracked in snow to
    house in which defendant lived, that wet shoes with same dis-
    tinctive mark on heel were found in room occupied by defend-
    ant, that defendant had several items later identified as coming
    from the jewelry store window in his possession, and that
    defendant had a ball-peen hammer in his possession that had
    been used to break the store window (CL 1948, § 750.110).

15. APPEAL AND ERROR—COURT OF APPEALS—CREDIBILITY OF WIT-
    NESSES.
    The Court of Appeals will not substitute its judgment for that
    of the trier of the facts who heard the testimony of the wit-
    nesses and observed their demeanor.

Appeal from Alpena; Glennie (Philip J.), J.
Submitted Division 3 February 10, 1966, at Grand

Rapids.    (Docket No. 684.)    Decided July 26, 1966.

Donald Edward Panknin was convicted of breaking and entering in the nighttime. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *John F. Kowalski,* Prosecuting Attorney, for the people.

*Robert D. Mandenberg,* for defendant.

HOLBROOK, P. J.   Defendant was tried and convicted by verdict of a jury of "breaking and entering in the nighttime"[1] in the circuit court for Alpena county on June 17, 1963, and sentenced to 3–15 years in prison.   Defendant's motion for new trial was denied by the trial judge July 12, 1963.   Defendant appeals and raises 5 questions for review:

1. Was the trial court without jurisdiction over the instant case and did the trial court err in denying defendant's motion for directed verdict on said grounds, and in entering judgment and sentence?

2. Did the trial court err in denying defendant's motion to suppress evidence in determining the search warrant was void but that the search and seizure was lawful because incident to a lawful arrest?

3. Did the trial court err in refusing to quash information and discharge defendant on the ground that his arrest was lawful, upon probable cause and that search and seizure of evidence was incident to a lawful arrest?

4. Was the conduct of the prosecutor unfair, improper and prejudicial so as to constitute reversible error, and, did the trial court err in failing to con-

---

[1] CL 1948, § 750.110 (Stat Ann 1962 Rev § 28.305).

trol the prosecutor's actions so as to deny defendant the right to a fair and impartial trial?

5. Did the trial court err in failing to direct a verdict of not guilty on the grounds that there was insufficient evidence from which the jury could find defendant guilty beyond a reasonable doubt?

The pertinent facts pertaining to the first question are as follows: Complaint was filed in the municipal court for the city of Alpena, February 5, 1963, and warrant issued the same day charging defendant with the crime in question. Defendant waived examination and return was made by the magistrate to the circuit court on February 6, 1963. Defendant was arraigned and requested appointment of legal counsel which was granted and the matter was remanded back to the municipal judge for preliminary examination, which was commenced February 21, 1963, and completed March 7, 1963, at which time the action was dismissed and defendant discharged. This case was circuit court file No. 1841. Another complaint charging the same offense was made before a justice of the peace of Alpena township, who issued a warrant. Defendant was arrested thereon subsequent to the dismissal of the first action and his discharge by the municipal judge. Defendant waived a preliminary examination on the new charge and was bound over to the circuit court for trial. Upon arraignment in circuit court, the same counsel was appointed again for defendant. Trial was had resulting in conviction of defendant.

The dismissal of the complaint and warrant and the discharge of defendant in the first case No. 1841, did not preclude his subsequent arrest and prosecution for the same offense upon a proper complaint, because the dismissal on examination did not constitute his being placed in jeopardy.[2]   *People* v.

2 See US Const, Am 5; Mich Const 1908, art 2, § 14.—REPORTER.

*Schoonover* (1943), 304 Mich 355, 361. See, also, *Gaffney* v. *Missaukee Circuit Judge,* (1891), 85 Mich 138.

The facts pertaining to the other questions raised on this appeal appear to be as follows:

Alfred Somers, an Alpena city police officer, discovered at approximately 3:30 a.m. on the morning of February 5, 1963, the front windows of the Alpena Northside Jewelry Store broken and contents taken from therein. The time of this discovery was approximately 35 to 40 minutes after the same premises had been checked by the same officer, at which time the two front windows were intact. That night a very slight snow had fallen. There was enough covering the ground so that footprints were plainly visible in front of the jewelry store window. While there were several sets of footprints on the sidewalk there was one set in particular which stood out. In this set of footprints there was an obvious marking in the heel which made these tracks easily distinguishable from all others. This marked set of tracks were exactly in front of the store while all other tracks were several feet away from the windows indicating they were made by people merely passing the store. The distinguishing tracks were found underneath some of the broken glass from the windows and on top of other broken glass indicating they were made both before and after the windows were broken.

Somers summoned another Alpena policeman and two State police officers who followed the footprints with the distinguishing mark. They led some several blocks away to an address on East Lake street in the city of Alpena. Upon noticing the tracks went into the home and that no tracks came out of the house, Officer Somers by radio asked for information as to who owned the house. After being told it was owned by one Alfred Panknin, the four

officers walked up to the side door of the home, knocked on the door and talked to Alfred Panknin, the owner. The officers asked Mr. Panknin if his son Donald were at home, to which he replied "yes". The officers then asked if they could talk to Donald and he replied, "Certainly, come on in." Since Mr. Panknin was crippled, he did not directly lead the officers to Donald's room; however, he pointed to the stairway and told them how to reach it themselves. Alfred Panknin also told the officers they could search the house. The officers walked into Donald's room at approximately 4:30 in the morning. He was awake but in bed. They told him they were investigating a breaking and entering; and he asked them "Where's your paper?" The officers said "We will get one," and left the bedroom followed closely by Donald Panknin, the defendant. Upon leaving the room one of the officers noticed a pair of shoes were still wet around the soles and contained the distinguishing heel mark which they had been following. The officers promptly left and talked to the prosecuting attorney. They then went and obtained a search warrant, and returned to the house and searched the bedroom of Donald Panknin and found various watches and diamond rings stashed in a sock, and hidden under a table. There was also a ball peen hammer on a table and a watch in a chair, easily observable by anyone. After the arrest, the owner of the jewelry store informed the officers that two watches had not been found and they then went to the jail and searched the defendant and found the two watches attached to a shoe string which was around his waist.

The trial judge in ruling on defendant's motion to suppress the evidence and quash the information determined that the search warrant had been illegally issued because of procedural defects, however, that

there had been a lawful arrest and therefore the search made in connection therewith was proper and the evidence admissible.

The issues raised by defendant's second and third questions are interrelated and will be dealt with together. The ruling of the trial judge that the search warrant was invalid, was correct. The first entry of the officers into the house of Alfred Panknin was lawful because they were invited in by the owner of the home and were granted permission to enter the room defendant was occupying, for the purpose of talking to him. Permission was also given to search the house.

Defendant claims that his constitutional rights under Const 1908, art 2, § 10[3] and US Const, Am 4[4] had had been violated.

Appellant's position is tenable unless it be determined under the facts of this case that defendant was lawfully arrested, and the search made in conjunction with such lawful arrest.

The rule concerning lawful arrest of a person for a felony without a warrant is set forth in the case of *People* v. *Bressler* (1923), 223 Mich 597, wherein Mr. Justice McDONALD stated on pp 600, 601 as follows:

"An officer may arrest without warrant in cases of felony upon information that would justify a reasonable man in acting upon it. *Ross* v. *Leggett,* 61 Mich 445 (1 Am St Rep 608).

---

[3] "Sec. 10. The person, houses, papers and possessions of every person shall be secure from unreasonable searches and seizures. No warrant to search any place or to seize any person or things shall issue without describing them, nor without probable cause, supported by oath or affirmation."

[4] "Am 4. The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

" 'No one without a warrant has any right to make an arrest in the absence of actual belief, based on actual facts creating probable cause of guilt. Suspicion without cause can never be an excuse for such action. The two must both exist, and be reasonably well founded.' *People* v. *Burt,* 51 Mich 199.

"In *People* v. *McLean,* 68 Mich 480, 485, this court said:

" 'The question whether an arrest can be made without warrant has been decided from time to time according to the various circumstances of each particular case, many of which may be found in 2 Hale, P.C. [Pleas of the Crown] 72–105. The principles recognized in the cases are:

" '1. Any person may arrest another who is actually committing, or has actually committed, a felony.

" '2. He may arrest any person whom he suspects on reasonable grounds to have committed a felony, if one has actually been committed.

" '3. Any constable or sheriff may arrest any person whom he suspects, on reasonable grounds, of having committed a felony, whether in fact a felony has been actually committed or not.' "[5]

Probable cause to believe that the crime of breaking and entering had been committed by someone under the facts present in the case at hand, cannot be seriously questioned. A proper inference could be made that the person making the tracks with the distinguishing mark was the only one in a position in front of the store building to have perpetrated the crime. This, taken together with the observation of the wet soles of defendant's shoes in his father's home, if observed by the officers while legally present, would appear to be sufficient to

---

[5] See CL 1948, §§ 764.15, 764.16 (Stat Ann 1954 Rev §§ 28.874, 28.875).

satisfy the rule that defendant was suspected, upon reasonable grounds, of having committed the crime.

In 2 Gillespie, Michigan Criminal Law and Procedure (2d ed), chap 28, Search and Seizure, § 875, p 1149, it is stated:

"Where an officer, by the exercise of his power of observation, in a place where he has a lawful right to be, sees evidence which leads him to believe that a felony has been committed or is contemplated, he has a right to arrest the suspected offender and search his person or property."[6]

The officers were legally in the home of Alfred Panknin by express invitation, at the time of the observation of the shoes of defendant connecting him directly with the crime which supplied the necessary ingredient of reasonable cause to justify the arrest and search.

A reasonable search of the person and place where the arrest is made, incident to a lawful arrest, is proper when the search is designed to reach: 1. The fruits of the crime, or 2. The means by which it was committed, or 3. Instruments calculated to effect escape from custody. *People* v. *Gonzales* (1959), 356 Mich 247; *People* v. *Kaigler* (1962), 368 Mich 281.

The search in question was for the fruits of the crime, *i.e.*, the jewelry and watches stolen, and the means by which the crime was committed, the ball peen hammer (used to break the windows), and therefore was proper.

Defendant asserts that the search was illegal because it was made before he was arrested. The record does not disclose by words the exact time of the arrest. The legal requirements for a lawful

---

6 *People* v. *Chomis,* 223 Mich 289; *People* v. *Cardella,* 233 Mich 505; *People* v. *Morlock,* 234 Mich 683; *People* v. *Duvall,* 243 Mich 498; *People* v. *Nappo,* 251 Mich 89; *People* v. *Mohl,* 252 Mich 469; *People* v. *Eing,* 267 Mich 657.

arrest, however, were present when the officers returned to the home the second time and defendant under the circumstances could have been deemed under the control of the officers and in custody at the time of the search. In *People* v. *Simon* (1955), 45 Cal 2d 645 (290 P2d 531), on p 648 it is stated:

"In *People* v. *Brown,* 45 Cal 2d 640 (290 P 2d 528), we held that a search incident to an arrest could not be justified in the absence of 'reasonable cause' under penal code, § 836 merely because it revealed that defendant was in fact guilty of a felony. Accordingly, the search of defendant's person may be justified only if he was committing or attempting to commit an offense in the officer's presence, penal code, § 836, subd 1, or the officer had reasonable cause to believe he had committed a felony. Penal code, § 836, subd 5. In such circumstances, however, it has been held that it is not significant whether the search precedes or follows the arrest [citing cases]. Thus, if the officer is entitled to make an arrest on the basis of information available to him before he searches, and as an incident to that arrest is entitled to make a reasonable search of the person arrested and the place where he is arrested, there is nothing unreasonable in his conduct if he makes the search before instead of after the arrest. In fact, if the person searched is innocent and the search convinces the officer that his reasonable belief to the contrary is erroneous, it is to the advantage of the person searched not to be arrested. On the other hand, if he is not innocent or the search does not establish his innocence, the security of his person, house, papers, or effects suffers no more from a search preceding his arrest than it would from the same search following it. In either case the important considerations are whether the officer had reasonable cause before the search to make an arrest and whether the search and any seizures incident thereto were or were not more extensive than would reasonably be justified

as incident to an arrest. See *United States* v. *Rabinowitz*, 339 US 56, 60–64 (70 S Ct 430, 94 L ed 653). We conclude, therefore, that a search is not unlawful merely because it precedes rather than follows the arrest."

There was no illegal search as claimed by defendant because of the time of the arrest.

Defendant further asserts error in his fourth question concerning claimed improper final argument by the prosecuting attorney to the jury. The argument is as follows:

"Speaking of the defendant, Mr. Habermehl has asked you to place yourselves in the mind of the defendant. Has he explained these tracks. Would you break a window, remove the jewelry, run down the alley, and then walk down Second avenue: I say you can't as members of the jury, nor can I, think as a criminal, because we don't know what he had in mind. He might have thought 'No one will ever suspect me of a breaking of the window and the taking of the jewelry if I were walking down Second avenue.'

"True, if I did it, I would want to run and get away from them. So would you. But we do not have criminal minds, or don't think the way criminals think. In many cases the most brazen ones, the most daring, are the least reasonable people you will suspect that that is what he had in mind.

"But there is one thing he forgot. Those tell-tale shoe prints! That he did not contemplate. But this, I believe as you can see, has been the method and the difficulty throughout the entire case. Some points have been stressed; the fact that practically undeniable evidence has been denied. Accusations have been made against the prosecutor; from the beginning of this case; accusations have been made against the police officers testifying from the stand. And subtle accusations against the justice is put before you."

There was no objection by defendant's counsel to these remarks made by the prosecutor. Under the circumstances we cannot say that such argument was prejudicial to the point that defendant was deprived of a fair trial. Also, because no timely objection was made, or no request made to instruct concerning the argument, under the settled law in this jurisdiction, error on appeal cannot be assigned thereon. *People* v. *Hurwich* (1932), 259 Mich 361, 365; *People* v. *Auerbach* (1913), 176 Mich 23 (Ann Cas 1915B, 557); *People* v. *Omacht* (1950), 326 Mich 505; *People* v. *Schwartz* (1921), 215 Mich 197.

Other argument of the prosecutor to which the defendant claims error is as follows:

*"Mr. Swallow:* I have always, throughout the entire length and breadth and inception of this case, been firmly convinced beyond a reasonable doubt that the defendant is guilty of the crime—

*"Mr. Habermehl:* This is improper argument, your Honor. The prosecutor can tell as to what he is convinced of by the evidence in this case. He can't testify and tell the jury that he personally is convinced.

*"The Court:* That is correct. You have a right to draw your conclusions from the testimony presented here, but not give your own personal views. I instruct the jury, and I will also subsequently, in another instruction, instruct you that the opinions of counsel and their own personal views have no bearing in this case, and you will disregard that statement. Go ahead."

In the case of *People* v. *Pope* (1896), 108 Mich 361, in a headnote it is stated:

"The expression of an opinion by the prosecuting attorney as to the guilt of the respondent is not ground for a reversal, where the jury were expressly instructed to disregard such opinion."

The circuit judge promptly and properly instructed the jury concerning these improper remarks of the prosecuting attorney and therefore it is not reversible error.

Defendant asserts as an issue in his fifth question that the trial court should have granted defendant's motion for a directed verdict of not guilty because there was insufficient evidence from which the jury could have found defendant guilty beyond a reasonable doubt.

The facts in the case of *People* v. *Trine* (1910), 164 Mich 1, appears to be analogous to the case at hand and therefore applicable. In *Trine, supra*, the proofs showed that between 9 p.m. on the 18th of December, and 7 a.m. on the 19th of December, the panel was broken in the rear door and that some money was missing from the cash register and some clothing missing from the store. Some months later, the defendant was found in possession of clothing claimed to be the missing articles and was convicted of breaking and entering. Mr. Justice HOOKER stated on p 3 of the opinion as follows:

"There was testimony in the case fairly tending to show the breaking and entering of such a store and stealing some of complainant's property in the nighttime. This *prima facie* established the *corpus delicti* and, under the most rigid rule, made proof to connect defendant with the transaction admissible."

In deciding the case, the Court quoted *People* v. *Mindeman* (1909), 157 Mich 120, in which a similar fact situation was involved. In the case at hand, the *corpus delicti* was more easily shown. The facts indicate that the breaking and entering occurred within a 45-minute period and that the larceny of certain items of jewelry from the store occurred within the same period. The defendant in this case

was not found some months later but, was arrested the same morning and, at the time of his arrest, possessed several items of the jewelry which had been taken from the store. The *corpus delicti* was sufficiently established by testimony fairly tending to show the breaking and entering of the store and the stealing of some of the property therefrom.

We conclude the record contains sufficient evidence which, if believed, supports a finding of guilty beyond a reasonable doubt. This court, on review, will not substitute its judgment for that of the triers of the facts who heard the testimony of the witnesses and observed their demeanor. *People* v: *Stevens,* 1 Mich App 673; *People* v. *White,* 2 Mich App 104.

We find no reversible error committed in the trial of the said defendant. Affirmed.

BURNS and McGREGOR, JJ., concurred.