## PEOPLE v. STEWART

1. CRIMINAL LAW—APPEAL AND ERROR—THEORIES OF INNOCENCE—NEGATION.

   An appellate court, in determining whether the prosecution has negated all theories consistent with a defendant's innocence, must look at the record in the light most favorable to the prosecution and decide whether sufficient evidence was adduced, which, if believed by the jury, could support a finding of guilt beyond a reasonable doubt.

2. BURGLARY—EVIDENCE—SUFFICIENCY.

   Testimony that defendant was the man who had left the burglarized store carrying a package and then had returned, coupled with the arresting officers' testimony that defendant was inside the store when they approached the scene, was sufficient evidence on which the jury could base a finding of

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 867.
[2] 13 Am Jur 2d, Burglary § 45 *et seq.*
[3, 4] 5 Am Jur 2d, Appeal and Error §§ 786, 883.

breaking and entering a business place with intent to commit larceny.

3. CRIMINAL LAW—EVIDENCE—REASONABLE PROBABILITIES.
   Evidence that establishes no more than a choice between reasonable alternative conclusions cannot be said to be sufficiently substantial to sustain a criminal conviction upon appeal.

4. CRIMINAL LAW—EVIDENCE—EVIDENTIARY CONFLICTS.
   Conflicting versions as to what defendant was doing in a store which had been burglarized did not present a choice between reasonable alternative conclusions but merely a choice between two different accounts of the incident; therefore, the jury could properly reject the defense version and accept the account of the prosecution witness.

Appeal from Recorder's Court of Detroit, John R. Murphy, J. Submitted Division 1 June 8, 1971, at Detroit. (Docket No. 9950.) Decided September 27, 1971. Leave to appeal denied, 386 Mich 775.

Michael Stewart was convicted of breaking and entering a business place with intent to commit larceny. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Leonard Meyers,* Assistant Prosecuting Attorney, for the people.

*Coleman E. Klein,* for defendant.

Before: LEVIN, P. J., and QUINN and V. J. BRENNAN, JJ.

V. J. BRENNAN, J. Defendant, Michael Stewart, was found guilty of breaking and entering a business place with intent to commit larceny (CL 1948 § 750-.110 [Stat Ann 1962 Rev § 28.305]) after a jury

trial in the Recorder's Court of Detroit. Defendant's motion for judgment of acquittal notwithstanding the verdict was denied. He was sentenced to a term of 3–1/2 to 10 years.

The only issue raised on appeal is whether there was sufficient evidence to support the jury's finding of guilt beyond a reasonable doubt. The testimony elicited at trial presents two contradictory versions of the circumstances leading to the arrest of the defendant. In view of the complex nature of the situation, each version of the incidents will be individually considered.

First, the version of the situation consistent with the jury's finding of guilt beyond a reasonable doubt:

Mr. James H. Williams testified at trial that he was the owner of a grocery store located at 3025 Beaubien in the City of Detroit. On the night of February 9, 1970, he closed and locked the store at approximately 10 p.m. The front door contained a plywood insert, which was intact at the time he closed the store. When he returned to the store the following morning, the plywood had been removed and poorly replaced in the door. He believed some packages of cigarettes were missing, but could not say how many.

Mr. George Haney testified that he lived directly across the street from Mr. Williams' store, and that he was awakened by a noise at approximately 12:45 a.m., February 10, 1970. After being awakened, he proceeded downstairs and looked out the window of his home; at this time he observed a Negro male leaving Mr. Williams' store carrying a package in his hands. Mr. Haney telephoned the Detroit Police Department to report the incident, and continued to observe the man who walked south on Beaubien.

Mr. Haney lost sight of this man, but remained on the phone with the police. He then observed a man approach from the south and enter the store; this man, the defendant, was arrested by the Detroit police and identified by Mr. Haney as the same man he originally saw leaving the store, despite the fact that he could not see defendant's face, and could not identify him at trial.

In response to a radio call received in their scout car, Detroit patrolmen Gainey and Wilson were the first police officers to arrive at the scene. Officer Gainey testified that as they approached the store from the north, he observed defendant in the store with the latter's head projecting outside and looking about. He told defendant to freeze, and defendant fell out of the doorway onto the ground. The plywood panel of the door was off, and individual packages of cigarettes were found both strewn about the floor of the store, and within a large box near the door.

Patrolman Wilson, who was driving the car, corroborated Officer Gainey's testimony and added that as the car approached the store, he observed defendant in the doorway bent over at the waist and moving his elbows.

Second, the defendant's explanation of the incident:

The defendant testified that he was preparing to leave the home of his girl friend, Cassandra Penny, at approximately 12:30 a.m., February 10, 1970. Her home is one-half block south of, and across the street from, Mr. Williams' grocery store. As he was leaving, he observed two men about to break into Mr. Williams' store; he instructed Miss Penny to telephone the police and then proceeded to the scene to discourage the two men. As he approached the

store, the two men dispersed; he was in the process of attempting to replace the paneling when officers Gainey and Wilson apprehended him.

Defendant attempted to inform the officers that he was not the culprit; he did not attempt to flee or resist arrest. When he was informed, by a detective at police headquarters, that there was an eyewitness and defendant might be placed in a lineup, he indicated that he was eager to take part in a lineup.

Miss Penny corroborated defendant's testimony, and further testified that she did call the police. At trial, two police department tape recordings were introduced into evidence. One was identified as a recording of Mr. Haney's call, the other was that of a woman informing the police of the same incident; such tape recordings include automatic time signals in the background. Counsel stipulated that the woman's call was received four and one-half seconds before Mr. Haney stated that defendant had been apprehended. Officers Gainey and Wilson approached the store from the north, and did not pass Miss Penny's residence in the process.

The police officers did corroborate defendant's testimony to some extent. They testified that defendant did attempt to indicate that he was responsible for the police department being informed of the incident. They also agreed that defendant did not attempt to flee or resist arrest.

Based on these facts, and the fact that there was a discrepancy between Mr. Haney's description of the culprit's apparel, and the police (and defendant's) description of his apparel, defendant contends that there was insufficient evidence introduced at trial to support a finding of guilt beyond a reasonable doubt.

When an appellate court is confronted with a challenge to the judgment of the trier of the facts, it will not easily be moved to overturn the judgment below. The trier of the facts, be it judge or jury, has had the opportunity to listen to the witnesses and observe their demeanor; he has had the opportunity to observe and evaluate the plethora of subjective and objective factors which together influence his opinion of the credibility of the witnesses. These factors do not survive in the stenographic transcription, we merely have a record of the words spoken at trial—an incomplete record at best. For this reason, an appellate court is reluctant to overturn the judgment of the trier of fact and substitute its judgment, which must necessarily be based on an inadequate description of the factors which lead the trier of fact to reach its decision. *People* v. *Franczyk* (1946), 315 Mich 384; *People* v. *Panknin* (1966), 4 Mich App 19.

The principle of deference to the judgment of the trier of fact is, like all soundly applied judicial principles, subject to exceptions. Defendant urges that this case should be an occasion of such an exception. Defendant advances two theories to support this argument: First, that the prosecution failed to negate all reasonable theories consistent with defendant's innocence, and, second, that the evidence presented the jury with a mere choice of probabilities, and therefore, for either, or both of these reasons, the evidence was insufficient to support a finding of guilt beyond a reasonable doubt.

In support of his first argument, defendant draws the attention of the Court to the appropriate language in *People* v. *Millard* (1884), 53 Mich 63, 70, as cited in *People* v. *Spann* (1966), 3 Mich App 444, 454, and reasserted in *People* v. *Fortuna* (1968), 13 Mich App 245, 246.

We feel that the rule as set forth in these cases is a sound one, but we disagree with defendant regarding its applicability to this case. Defendant asks, rhetorically, " * * * doesn't the evidence at the very least fairly make out the defense theory that appellant was an innocent person mistakenly arrested for a crime he attempted to prevent?" We feel that the answer to this question, even if the Court were swayed to respond in the affirmative, is irrelevant to our disposition of this case. To determine whether or not the prosecution negated all theories consistent with innocence, we must look at the record in the light most favorable to the prosecution and determine whether sufficient evidence was adduced, which, if believed by the jury, *could* support a finding of guilt beyond a reasonable doubt (*People* v. *Williams* [1962], 368 Mich 494; *People* v. *Panknin, supra; People* v. *Floyd* [1968], 15 Mich App 284), not whether it could support a verdict of innocent.

The testimony of the eyewitness that the defendant was the same man who previously left the store carrying a package, coupled with the testimony of the police officers that defendant was inside the store when they approached the scene, is sufficient evidence on which the jury could base a finding of guilty beyond a reasonable doubt. The defendant asserts it would be illogical for a man who knew the police were being summoned to attempt to remove merchandise from the store; the prosecution would argue that it is illogical for an innocent party to enter the store at all, let alone tamper with the scene of the crime by attempting to replace the broken paneling. These and other such questions are proper for a closing argument to a jury, and not to an appellate court on review.

At oral argument defendant called the attention of the Court to *United States* v. *Saunders* (CA6, 1964), 325 F2d 840, 843, which advances the proposition that,

"Evidence that at most establishes no more than a choice of reasonable probabilities cannot be said to be sufficiently substantial to sustain a criminal conviction upon appeal."

We do not agree with defendant that the evidence in this case presents no more than a "choice of reasonable probabilities."

In *Saunders* the evidence presented established that a police informer did not possess any narcotics before meeting the defendant, but he did possess narcotics and had parted with cash after he met defendant. The defendant and the informer were not under surveillance for the entire time they were together, and the informer was not available to testify at the trial. The probabilities presented in that case were, obviously, that the informer either purchased narcotics from the defendant or acquired them elsewhere.

In the case at hand, the jury was not presented with a choice of "probabilities" but with a choice between two different eyewitness accounts of the incident. Both of these versions could not be entirely true; either the defendant and Miss Penny were being less than candid, or Mr. Haney's identification was mistaken. In order to reach a verdict in this case, the jury had to accept some of the testimony and reject some of the testimony. Such decisions are properly left to the jury. *People* v. *Brown* (1970), 21 Mich App 579.

To reverse the decision below on this argument would have the effect of raising the "reasonable

doubt" standard as an almost absolute bar against conviction. There are evidentiary conflicts in almost every case, civil or criminal, and it is the function of the trier of fact to resolve such conflicts.

Affirmed.

All concurred.