# STATE OF MICHIGAN

# COURT OF APPEALS

LAROSA BUTLER,

Plaintiff-Appellee,

v

GOLD MOUNTAIN INC, d/b/a EASY PICK FOOD MARKET,

Defendant-Appellant.

UNPUBLISHED
August 2, 2018

No. 336671
Wayne Circuit Court
LC No. 15-015302-NO

Before: BOONSTRA, P.J., and BECKERING and RONAYNE KRAUSE, JJ.

RONAYNE KRAUSE, J. *(dissenting)*

I respectfully dissent, because I find that plaintiff adequately established a genuine question of fact regarding defendant's actual notice of the ice, and I would find the ice not to be open and obvious. I would therefore affirm and remand for further proceedings.

I agree with the lead opinion that this Court should decline the parties' invitations to draw conclusions about the truthfulness of each others' witnesses. *White v Taylor Distributing Co, Inc*, 275 Mich App 615, 624-625; 739 NW2d 132 (2007). My colleagues, explicitly or implicitly, nevertheless do so. At a summary disposition stage of proceedings, the courts "may not weigh the evidence or make determinations of credibility," and summary disposition is improper if the evidence is conflicting. *Patrick v Turkelson*, 322 Mich App 595, 605-606; 913 NW2d 369 (2018) (quotation omitted). When reviewing a motion for summary disposition under MCR 2.116(C)(10), which tests the factual sufficiency of the complaint, the court "must consider the pleadings, affidavits, depositions, admissions, and any other evidence in favor of the party opposing the motion, and grant the benefit of any reasonable doubt to the opposing party." *Radke v Everett*, 442 Mich 368, 374; 501 NW2d 155 (1993).

The lead opinion accurately recites portions of plaintiff's testimony. However, a more complete recitation is as follows:

> [*Defendant's attorney*]. Tell me about your conversation with the guy that was dealing with the bottles.
>
> [Plaintiff's attorney]: I'll object to form.

*A.* I walked in and a lady was first that I talked to, told her I fell, the bottle guy told me to be careful, that's what he said, he told me to "Be careful."

*Q.* And why did he say to be careful?

[Plaintiff's attorney]: Object to foundation.

[Defendant's attorney]: Let me rephrase.

*Q.* Did he tell you why he was telling you to be careful?

*A.* Because when I walked in I told them both I fell.

*Q.* Okay.

*A.* And he was like "You should be careful." And me and the lady interacted.

*Q.* What did the lady say to you when you told her you fell?

*A.* She said – what did she say. I walked in and I said "I just fell outside the store."

And she said to me "Oh." She said "Oh, you fell out there?"

I said "Yeah."

And that's when the bottle guy said – yeah, "Be careful."

And she said to me "Oh," something of she was "Sorry," and she was sorry and with a – with a grin.

*Q.* I'm sorry?

*A.* With a smile, with a grin, that's what I recall and she was – they were going to take care of it.

*Q.* She said they were going to take care it of? [sic]

*A.* Yeah, she said they were going to take care of it. As if they knew it was there like we'll take care of it with a grin, was kind of –

*Q.* What did you fall on?

*A.* I fell on ice right here (indicating)

\* \* \*

*Q.* So the lady inside she said "Sorry" and grinned at you. Did you have any other conversation with her?

*A.* No.

*Q.* Did you ask her to fill out an incident report or anything like that?

*A.* No.

*Q.* Did you tell her what caused your fall?

*A.* No. Told her I slipped and fell.

*Q.* Did you tell her there was ice out there?

*A.* I told the bottle guy, me and the bottle guy. Her, she was grinning.

\* \* \*

*Q.* I only have a few more questions for you. The lady that you saw at the store, you didn't get her name. Did you tell me that you did not recall what color hair she had?

*A.* No. I don't recall what color hair she had, I just remember –

*Q.* Okay.

*A.* –her apologizing and saying that she would get to the ice out there that they hadn't got to.

*Q.* And you said she was behind the counter?

*A.* Yes.

\* \* \*

*[Plaintiff's attorney].* And we were talking about – counsel asked about conversation [sic] you had with the employee when you got – entered into the store.

*A.* Uh-huh (affirmative).

*Q.* So I just want to talk to you about that. You indicated that the employee said – after you told her that you had fallen, she said she would take care of it. What did she mean when she indicated she would take care of it, what did she indicate to you?

[Defendant's attorney]: Object to form and foundation. You can answer.

-3-

[The witness]: She said I can answer?

Q. Yeah, you can answer.

A. Okay. She said – I told her I fell and she said – she told me she was sorry but with a little funky grin, little smirk behind it, but she did tell me that she would get to it, that they hadn't got to it but they would get to it –

Q. Okay.

A. – I guess put salt out.

Q. Okay.

A. But that they hadn't had time to put salt out or get salt out so that she would get to it but she did apologize.

Q. Okay. So it sounds like she acknowledged that she had known about it but didn't have time to get to put salt out?

[Defendant's attorney]: I would object to form and foundation.

A. She acknowledged that she knew.

Q. What was your impression by what she said how long she had known about it?

[Defendant's attorney]: Again, object to form and foundation.

A. Just amazed that you knew and didn't do anything.

Q. Okay. And what was your impression of how long she had known about the ice that you slipped on?

[Defendant's attorney]: Same objection.

A. Okay. Say it again.

Q. Want me to rephrase it?

A. Yeah.

Q. That's fine. When she told you – you indicated that she said she would get to it, she didn't have time to, because – to put the salt out but she would get to it?

A. She would get to it.

Q. So she acknowledged that she was aware of it –

-4-

*A.* Yes, ma'am.

*Q.* – correct? And what was your impression when she told you that about how long she had known that the ice was out there?

[Defendant's attorney]: Same objection to the foundation of the question.

*A.* She didn't do anything, that she had left it out there, and I told her I fell.

*Q.* And afterwards did you see her go out there and –

*A.* No.

*Q.* – put salt down?

*A.* No. And the guy never went either.

\* \* \*

*[Defendant's attorney].* Now you had said that the lady that you talked to that she said they'd take care of it and that you took this to mean that she knew about it. Why did you think she knew about it?

*A.* Because she said she knew, she said that she hadn't got to it, that she would take care of it.

*Q.* She hadn't gotten to what?

*A.* I guess putting salt out.

*Q.* Is that what she said to you or did she say – I mean, like what were her words?

*A.* That was our conversation. Like I said, I walked into the store, told her I fell, the lady and the guy, and she said – she apologized, she said okay, she apologized to me with the laugh, and then after the laugh she said she would get to it, and I guess they hadn't – she said they hadn't got to it or they would get to it.

*Q.* Do you know which she said?

*A.* Can't recall but I'm think'n that she really said to me that she hadn't got to it and she would get to it.

*Q.* But you're not sure?

*A.* No. And I don't know if the bottle guy went out and put the salt out either.

*   *   *

*Q.* So between the five minutes that you – or I'm sorry. Between the time that you had the conversation with her and the time you left about five minutes passed?

*A.* I'm saying the time he came – yeah, when I left out [sic] five minutes she didn't come out or she didn't come and put salt out, she didn't come out behind me at all.

*Q.* Okay. Did she ever say to you that she saw the ice?

*A.* She indicated that she knew it was out there.

*Q.* When did she say that?

*A.* When we had the conversation, I told you when I said to her that – she said I would get to it, they hadn't got to it or they was [sic] going to get to it and like I said, her or the guy never left out [sic] behind me.

*Q.* I understand that. But you're saying that her saying that they would get to it --

*A.* They were going to get to it. She was going to take care of it.

*Q.* Did she ever say to you "I know there's ice out there"?

*A.* No, she didn't say "I know there's ice out there" –

*Q.* Okay.

*A.* – but she did indicate that she knew it was out there.

*Q.* And in what way did she indicate that to you?

*A.* That she would get to it.

*Q.* So when she said "she would get to it" to you that meant she knew?

*A.* She said she was going to handle it, that they hadn't got out there, she would get to it.

*Q.* But she never actually said outright that she knew that there was something out there; is that correct?

*A.* That they hadn't handled it so that she knew.

-6-

*Q.* I'm not asking for what you –

*A.* Oh, okay.

*Q.* – I mean, you're speculating right now, aren't you?

*A.* Okay.

*Q.* Wouldn't you agree that that's speculation, you're assuming that you knew what she meant when she said (inaudible) –

[Plaintiff's attorney]: Object to form.

*Q.* But she didn't actually say that she knew it was ice, did she?

*A.* I'm not assuming, I'm telling you she knew the ice was out there.

*Q.* How do you know she (inaudible) –

*A.* She said she was going to get to it, that they hadn't got to it, so if you hadn't got to it you knew the ice was out there.

\* \* \*

*[Plaintiff's attorney].* And I know you just went back and forth with counsel about what was said by the employee at the store.

*A.* Yes.

*Q.* And you indicated that the employee knew the ice was out there by what she was telling you?

*A.* Yes.

*Q.* So when you walked in you told her that you had fallen on ice; correct?

*A.* Yes.

*Q.* And what did she say in response?

*A.* That she would take care of it, that they hadn't got to it and she would take care of it, and she apologized to me.

*Q.* So she knew the ice was out there?

[Defendant's attorney]: Objection, form and foundation –

*A.* Yes.

-7-

[Defendant's attorney]: – speculation.

*Q.* Did she – so she said "Sorry," she smirked.

*A.* Yes.

*Q.* And then she said – what did she say?

*A.* That she would take care of it, that they hadn't got to it and she would take care of it.

Consequently, I believe the lead opinion mischaracterizes plaintiff's testimony. Contrary to the lead opinion's assertion, plaintiff did not "admit[] that at no time did either person specifically acknowledge the presence of ice." Rather, plaintiff only admitted that neither employee said that they knew of the ice *in in those exact words*. I believe my colleagues, explicitly or implicitly, unfairly deem plaintiff's testimony speculative because some of her responses were unclear or because plaintiff could not recall the entirety of her conversation verbatim.

Plaintiff's testimony establishes a genuine question of fact whether defendant's clerk had actual notice of the ice. First, plaintiff repeatedly emphasized that the clerk said she "*hadn't got to*" the ice. Such a statement necessarily implies awareness that there *had been* a matter to address; in other words, knowledge of a pre-existing condition. Even if plaintiff could not recall specifically what words the clerk used, any limitations of plaintiff's memory go to the weight and credibility the trier of fact may choose to give her testimony, not to its admissibility. *Triple E Produce Corp v Mastronardi Produce, Ltd*, 209 Mich App 165, 175; 530 NW2d 772 (1995); *People v Burch*, 170 Mich App 772, 775; 428 NW2d 772 (1988). Furthermore, to the extent it may be ambiguous whether plaintiff was recounting further conversation or surmising the clerk's intent, any doubt must be construed in favor of plaintiff as the non-moving party. *Radke*, 442 Mich at 374.

Additionally, plaintiff's partial reliance on nonverbal communication, such as the clerk's facial expression and demeanor, is consistent with how people communicate. See *Gadde v Mich Consolidated Gas Co*, 377 Mich 117, 127; 139 NW2d 722 (1966). Our jurisprudence is founded on the principle that the trier of fact may draw non-speculative conclusions based in part on witnesses' demeanor and an associated "plethora of subjective and objective factors" that cannot be captured in words. See *People v Stewart*, 36 Mich App 93, 98; 193 NW2d 184 (1971); see also *People v Paille*, 383 Mich 621, 627-628 n 2; 178 NW2d 465 (1970). Furthermore, "facial expressions, body language, and manner of answering questions" are considered "[p]erhaps the most important criteria in selecting a jury" to attorneys conducting voir dire, *People v Unger*, 278 Mich App 210, 258; 749 NW2d 272 (2008), which would be reasonable to apply to jurors or to any other person acting as a trier of fact. An admission may be implicit, *Shook v Proctor*, 27 Mich 349, 359-360 (1878), and testimony is not improperly conclusory merely because a witness can only recall "the main fact" of what was spoken rather than the "particular expressions." *Chambers v Hill*, 34 Mich 523, 524-525 (1876). Plaintiff expressly stated that the clerk acknowledged her prior awareness of the ice, which by itself creates a triable question of fact. However, even presuming plaintiff was merely stating a conclusion, I believe the lead opinion

inappropriately discounts plaintiff's objective and particularized articulations of why she drew that conclusion.

Because there is a genuine question of fact as to whether defendant was on actual notice of the ice, it is necessary to address whether the ice was open and obvious. Premises owners in Michigan are required to exercise reasonable care to protect invitees from unreasonable risks of harm from dangerous conditions on the premises, unless the dangerous condition is open and obvious. *Slaughter v Blarney Castle Oil Co*, 281 Mich App 474, 477-478; 760 NW2d 287 (2008). This Court has rejected the contention that black ice is open and obvious *per se* "without evidence that the black ice in question would have been visible on casual inspection before the fall or without other indicia of a potentially hazardous condition." *Id*. at 483. As the lead opinion's recitation of the evidence suggests, little, if any, evidence of such indicia existed. As a consequence, there is no basis for finding the black ice open and obvious. *Id*.

At a summary disposition stage of proceedings, the issue before the court is not whether a party should ultimately prevail at trial on the basis of the admitted evidence, but whether the admitted evidence shows a question of fact within the exclusive province of the trier of fact. See *Lytle v Malady (On Reh)*, 458 Mich 153, 175-176 n 23; 579 NW2d 906 (1998) (WEAVER, J.) (quoting *Anderson v Liberty Lobby, Inc*, 477 US 242, 249-250; 106 S Ct 2505; 91 L Ed 2d 202 (1986), for the proposition that although evidence must be more than "merely colorable" to raise an issue for trial, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial"). I believe the lead opinion subjects plaintiff's deposition testimony to excessive scrutiny at this stage of the proceedings. Plaintiff's testimony constitutes competent evidence that defendant's clerk was actually aware of the ice at defendant's door. I would therefore affirm the trial court's denial of summary disposition and remand for further proceedings.

/s/ Amy Ronayne Krause