*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

GREGORY DEAN TUCKER,

        Defendant-Appellant.

UNPUBLISHED
August 29, 2019

No. 343351
Oakland Circuit Court
LC No. 2017-264833-FH

Before: K. F. KELLY, P.J., and TUKEL and REDFORD, JJ.

PER CURIAM.

Defendant, Gregory Dean Tucker, appeals as of right from his jury trial conviction of breaking and entering with the intent to commit a larceny, MCL 750.110. The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to 9 to 15 years' imprisonment. For the reasons provided below, we affirm.

## I. BACKGROUND FACTS

On September 30, 2016, Talya Ashford locked the door of her Ferndale business, Beauty Box Studios, and left for the day. When she returned at 5:00 a.m. the next day, she found her space ransacked, and there was a Coke bottle and lighter that had not been there the previous day; in addition, $10,000 in items were missing. She called the police, who took the Coke bottle into evidence and had it tested for DNA. The bottle contained the DNA of two individuals. One was a "minor donor" who could not be identified. The other was a "major donor," whose DNA profile preliminarily matched the DNA profile of defendant. A subsequent test matched the DNA from the Coke bottle with the DNA from a cheek swab taken from defendant to an almost 100% certainty. On the basis of this evidence, the jury found defendant guilty. While defendant's minimum sentencing guidelines range was 19 months to 76 months, the trial court sentenced defendant to a minimum term of imprisonment of 9 years (108 months).

## II. SUFFICIENCY OF EVIDENCE

Defendant first argues that the evidence was insufficient to prove that he had committed the charged offense. We disagree.

-1-

Because "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged," *In re Winship*, 397 US 358, 364; 90 S Ct 1068; 25 L Ed 2d 368 (1970), the constitutional standard requires that we determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," *Jackson v Virginia*, 443 US 307, 319; 99 S Ct 2781; 61 L Ed 2d 560 (1979). See also *People v Unger*, 278 Mich App 210, 222; 749 NW2d 272 (2008). Circumstantial evidence and reasonable inferences that arise from the evidence can sufficiently prove the elements of a crime. *People v Jolly*, 442 Mich 458, 466; 502 NW2d 177 (1993). Identity is an element of every crime. *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). Thus, no conviction can be sustained if the prosecution fails to prove the defendant's identity beyond a reasonable doubt. *People v Oliphant*, 399 Mich 472, 489; 250 NW2d 443 (1976).

Relying on a Sixth Circuit case, defendant challenges the sufficiency of the evidence with respect to the identity element, arguing that reversal is required " 'if the evidence . . . gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence.' " *United States v Caseer*, 399 F3d 828, 840 (CA 6, 2005), quoting *United States v Reveles*, 190 F3d 678, 686 (CA 5, 1999).[1] However, the Fifth Circuit has abrogated *Reveles*, holding that the "equipoise rule" quoted in *Caseer* was incorrect for use in reviewing claims regarding sufficiency of the evidence following *Jackson*. *United States v Vargas-Ocampo*, 747 F3d 299, 301-302 (CA 5, 2014) (en banc). Nor has the "equipoise rule" been adopted in any Michigan court. Defendant cites another Sixth Circuit case for the proposition that if the evidence, when viewed in the light most favorable to the prosecution, presents nothing more than a choice between competing possibilities, the defendant must be acquitted. *United States v Saunders*, 325 F 2d 840 (CA 6, 1964). This too is not the rule in Michigan. We rejected the *Saunders* standard in *People v Stewart*, 36 Mich App 93, 100; 193 NW2d 184 (1971), stating that accepting that argument "would have the effect of raising the 'reasonable doubt' standard as an almost absolute bar against conviction." Importantly, *Stewart* instead adopted the constitutional standard later ratified by the U.S. Supreme Court in *Jackson*—"we must look at the record in the light most favorable to the prosecution and determine whether sufficient evidence was adduced, which, if believed by the jury, could support a finding of guilty beyond a reasonable doubt," *Stewart*, 36 Mich App at 99, which is not consistent with the equipoise rule. The *Stewart* standard has been followed in later cases as well. See *People v Lane*, 308 Mich App 38, 57; 862 NW2d 446 (2014); *Unger*, 278 Mich App at 222.

In this case, the most probative evidence regarding the identity of the perpetrator was the DNA from the Coke bottle, combined with the owner's unequivocal testimony that the bottle was not there when she left the day before. Defendant poses multiple theories under which he

---

[1] We note that *Caseer* additionally provided the recognized standard of review: "whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Caseer*, 399 F3d at 840 (quotation marks and citation omitted).

could be innocent: the actual criminal was the other person whose DNA was on the bottle in amounts too small to be identified; a customer left the bottle and the thief never touched it; the owner staged the robbery; or a former employee used a key to enter and rob the owner. Defendant correctly argues that there is no evidence to disprove any of these possibilities. However, the prosecution is also correct that "it is unnecessary for the prosecutor to negate every reasonable theory consistent with the defendant's innocence." *People v Carson*, 189 Mich App 268, 269; 471 NW2d 655 (1991). Rather, "[i]t is sufficient if the prosecution proves its own theory beyond a reasonable doubt in the face of whatever contradictory evidence the defendant may provide." *Id.*

Moreover, construing the evidence in the light most favorable to the prosecution, as we are required to do, each of defendant's alternative theories necessarily fails: the owner testified that the bottle was not in the store when she left, and defendant was not a customer. Thus, defendant's theories fail to account for how the bottle containing defendant's DNA could have gotten into the store if he was *not* the robber. In addition, the owner's testimony negates the theory that she staged the robbery. The owner also testified that no one else had a key except the landlord, and that the keys could not be duplicated. Defendant provided no contradictory evidence. The credibility of testimony is for the trier of fact to determine; we do not resolve it anew. *People v Davis*, 241 Mich App 697, 700; 617 NW2d 381 (2000). Nor do we substitute our judgment for that of the jury regarding how much weight to give the evidence. *Unger*, 278 Mich App at 222. The jury clearly inferred from the DNA evidence and the owner's testimony, as it was permitted to do, that defendant committed the crime. Because the jury's conclusion that the prosecution proved the identity element beyond a reasonable doubt was rationally permitted by the evidence, *Jackson*, 443 US at 319, defendant's due-process rights were not infringed.

## III. ANONYMOUS JURY

Next, defendant argues that the trial court empaneled an anonymous jury and that this violated his constitutional right to the presumption of innocence. Again, we disagree.

This issue is unpreserved because defendant did not raise this objection in the trial court. *People v Hanks*, 276 Mich App 91, 92; 740 NW2d 530 (2007). We review unpreserved issues for plain error. *Id.*, citing *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). Under the plain-error rule, a defendant may avoid forfeiture of an unpreserved issue if he can establish that a plain (i.e., clear or obvious) error was made, and that the error affected his substantial rights. *Id.* at 763. An error affects a defendant's substantial rights if he or she can establish prejudice, "i.e., that the error affected the outcome of the lower court proceedings." *Id.*

This Court has explained that the "impaneling of an 'anonymous jury' is an extreme measure, in which 'certain biographical information about potential jurors' is withheld, even from the parties." *People v Williams*, 241 Mich App 519, 523; 616 NW2d 710 (2000), quoting *United States v Branch*, 91 F3d 699, 723 (CA 5, 1996). The practice is used "presumably for the safety of the jurors or to prevent harassment by the public." *Williams*, 241 Mich App at 522. However, the practice also may impact a defendant's ability to conduct meaningful voir dire questioning of the jury, and it also has the potential to interfere with a defendant's right to be presumed innocent until proven guilty. *Id.* at 522-523. Therefore, "in order to successfully challenge the use of an 'anonymous jury,' the record must reflect that the parties have had

information withheld from them, [thereby] preventing meaningful voir dire, or that the presumption of innocence has been compromised." *Id*. at 523.

In *Williams* the jury was anonymous only in that their names were not read into the record; rather they were referred to during trial by juror number. *Id*. Nothing in the record supported the conclusion that any information about the jurors was withheld from the parties—to the contrary, the voir dire conducted by the parties demonstrated that information was not withheld from them. *Id*. In fact, the defendant admitted on the record that he had access to the juror questionnaires required by MCR 2.510, which contained biographical information about the jurors. *Id*. at 523-524. Additionally, the *Williams* panel found nothing in the record to indicate that referring to the jurors by number in any way affected the presumption of innocence. *Id*. at 524. There was "no suggestion that jurors understood the use of numbers rather than names to be anything out of the ordinary. Thus, there was no suggestion that defendant's trial was being handled in a special way, with the resulting implication that he was generally dangerous or guilty as charged." *Id*. *Williams* held that the use of juror numbers at trial instead of names did not violate the defendant's due-process rights. *Id*. at 525.

We addressed this issue again seven years later in *Hanks*, 276 Mich App 91. As in *Williams*, the jurors in *Hanks* were identified by juror numbers, but the juror questionnaires were provided to the parties. The parties conducted extensive voir dire, and there was no indication in the record that the jurors attached any significance to the use of numbers rather than names. *Id*. at 94. On this basis, the *Hanks* panel affirmed the conviction. The panel noted that it was bound by *Williams* but also stated that it was not persuaded that *Williams* had been wrongly decided. *Id*. at 95.

Here, as in *Williams* and *Hanks*, the jurors were not identified during trial except by number. However, there is no indication in the record that the parties did not receive the jury questionnaires containing biographical information, nor that the jury attached any particular significance to the trial court's decision to refer to them by juror number. Thus, defendant has failed to prove any plain error. As in *Williams*, there was no indication that the jurors thought anything of the use of their juror numbers rather than their names, and there is nothing in this record to indicate that referring to the jurors by number in any way affected the presumption of innocence. *Williams*, 241 Mich App at 524. To the contrary, on multiple occasions, including in the judge's initial instructions, his admonition at the close of plaintiff's case, and during his final instructions, the jurors were instructed that they must presume defendant innocent until deliberations. Jurors also heard similar warnings many times during voir dire, including by defendant himself and by the prosecutor. In fact, each juror confirmed that he or she would presume defendant innocent until the time for deliberations. Under these circumstances, defendant's claim that he was prejudiced by an "anonymous jury" fails.

IV. SENTENCING

Finally, defendant argues that the trial court's imposition of a sentence that fell outside the guidelines range was unreasonable and disproportionate. Specifically, defendant argues that the sentence was based entirely on his criminal history, which already was taken into consideration by the guidelines. We disagree.

"A sentence that departs from the applicable guidelines range will be reviewed by an appellate court for reasonableness." *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). "[T]he standard of review to be applied by appellate courts reviewing a sentence for reasonableness on appeal is abuse of discretion." *People v Steanhouse*, 500 Mich 453, 471; 902 NW2d 327 (2017) (*Steanhouse I*). Under *Lockridge*, Michigan's sentencing guidelines are no longer mandatory; rather they are advisory in all cases. *Id.* at 470. However, "[s]entencing courts must . . . continue to consult the applicable guideline range and take it into account when imposing a sentence . . . [and] justify the sentence imposed in order to facilitate appellate review." *Lockridge*, 498 Mich at 392. But " 'the key test is whether the sentence is proportionate to the seriousness of the matter, not whether it departs from or adheres to the guidelines' recommended range.' " *Steanhouse I*, 500 Mich at 475, quoting *People v Milbourn*, 425 Mich 630, 661; 461 NW2d 1 (1990).

A sentence is reasonable within the meaning of *Lockridge* if it does not violate the principle of proportionality that was set forth in *People v Milbourn*, 435 Mich 630; 461 NW2d 1 (1990), and its progeny. *Steanhouse I*, 500 Mich at 471. "The purpose of the proportionality requirement is to combat unjustified disparity in sentencing, thereby ensuring that 'similar offense and offender characteristics receive substantially similar sentences.' " *People v Odom*, ___ Mich App ___, ___; ___ NW2d ___ (Docket No. 339027, issued March 12, 2019); slip op at 8, quoting *People v Dixon-Bey*, 321 Mich App 490, 524; 909 NW2d 458 (2017) (quotation marks and citation omitted in *Odom*). The principle of proportionality "requires 'sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender.' " *Steanhouse I*, 500 Mich at 474, quoting *Milbourn*, 435 Mich at 636. A trial court abuses its discretion in applying the principle of proportionality when it fails to provide sufficient reasons for the imposed, out-of-guidelines sentence. *Steanhouse I*, 500 Mich at 476. Factors that may be considered when applying the principle of proportionality include:

> (1) the seriousness of the offense; (2) factors that were inadequately considered by the guidelines; and (3) factors not considered by the guidelines, such as the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation. [*People v Steanhouse (On Remand) (Steanhouse II)*, 322 Mich App 233, 238-239; 911 NW2d 253 (2017) (quotation marks and citation omitted).]

Cases in which the sentence was disproportionate, and therefore unreasonable, must be remanded for resentencing by the trial court. *Steanhouse I*, 500 Mich at 476.

In this case, the trial court recounted defendant's lengthy criminal history, which included seven prior felonies and 18 prior misdemeanors. The court also recognized that defendant had an extensive history of violating parole and probation, including absconding. In imposing a 9-year minimum sentence, the court stated:

> The Court finds that the small upward deviation from the advisory guideline range is reasonable in light of [defendant's] serial parole[] absconding, long train of violations of probation and parole violations.

He's had a series of similar offenses. He's had prior terms of incarceration. The Michigan Department of Corrections have not acted as a deterrent. And the total [prior record variable (PRV)] level is 140, nearly twice the maximum.

Thus, factually, defendant is incorrect when he states that the trial court relied solely on his past criminal history as already contemplated by the guidelines. The trial court clearly also relied on defendant's propensity for recidivism. Importantly, even when the sentencing guidelines were *mandatory*, prior to our Supreme Court's decision in *Lockridge*, courts could impose a sentence outside the guidelines on the basis of a defendant's "repeated offenses and failures at rehabilitation." *People v Horn*, 279 Mich App 31, 44-45; 755 NW2d 212 (2008); see also *People v Schaafsma*, 267 Mich App 184, 186; 704 NW2d 115 (2005) (stating that "the offender's probation violation itself is an objective and verifiable factor worthy of independent consideration" and can constitute a reason for departing from the mandatory sentencing guidelines). Thus, now that the guidelines are *advisory*, it follows that, *a fortiori*, these same reasons can justify a sentence outside the guidelines. See *Lockridge*, 498 Mich at 391 (noting that trial courts are no longer required to articulate substantial and compelling reasons to depart from the minimum sentencing guidelines range, and thus a sentence must only be reasonable). As the Court is *Schaafsma* stated, "[A]ny probation violation represents an affront to the court and an indication of an offender's callous attitude toward correction and toward the trust the court has granted the probationer." *Schaafsma*, 267 Mich App at 185-186.

In addition, the trial court properly considered that defendant's PRV score was 140, falling within the highest category of "75+" points. By stating that this score was "nearly twice the maximum [threshold of 75 points]," the court clearly was implying that the guidelines inadequately addressed defendant's criminal history. In *Odom*, we upheld an out-of-guidelines sentence in which the trial court relied in large part on the defendant's significant criminal history, stating that it was a factor not adequately reflected in the guidelines.[2] *Odom*, ___ Mich App at ___, slip op at 9. In *Schaafsma*, we also agreed with the trial court's conclusion that the guidelines did not give enough weight to the defendant's prior record. *Schaafsma*, 267 Mich App at 186. Thus, defendant's argument that courts cannot impose an out-of-guidelines sentence by reference to the "75+" column is contrary to cited cases. Because all of the factors on which the trial court relied in this case were appropriate, the court was justified in imposing a sentence that exceeded the guidelines range.

Defendant takes issue with how much the sentence exceeded the guidelines range. The top end of the guidelines range was 76 months, and the court sentenced defendant to a minimum sentence of 108 months. While defendant claims that such a 32-month increase is excessive, we note that this sentence falls within the range contained in the more severe adjacent cell on the sentencing grid. See MCL 777.65.[3] Accordingly, we hold that the trial court did not abuse its

---

[2] *Odom* also relied on the defendant's serious recidivism, and the fact that he committed the crime at issue while on parole; both factors that also exist in the instant case.

[3] For defendant, that range would be 29 to 114 months.

discretion by imposing a sentence that reflected "the seriousness of the circumstances surrounding the offense and *the offender*." *Steanhouse I*, 500 Mich at 474 (quotation marks and citation omitted; emphasis added).

Affirmed.

/s/ Kirsten Frank Kelly
/s/ Jonathan Tukel
/s/ James Robert Redford