PEOPLE v. FRANCZYK.

1. CRIMINAL LAW—LARCENY—EVIDENCE.
   In prosecution for larceny from a store, record *held*, to contain evidence that defendant committed larceny (Act No. 328, § 360, Pub. Acts 1931).

2. SAME—FINDING OF GUILT—PROOF BEYOND REASONABLE DOUBT.
   In a criminal case the true test is whether guilt of accused was proven beyond a reasonable doubt, not whether the finding of guilt was against the great weight of the evidence.

3. SAME—CONFLICTING EVIDENCE—NONJURY TRIAL—CREDIBILITY.
   When there is testimony pro and con on an issue of fact in the trial of a criminal case tried without a jury, the matter of credibility is quite decisive and since the trial judge hears and sees the witnesses he is much better qualified to pass upon credibility than a reviewing court.

4. SAME—LARCENY FROM STORE—EVIDENCE.
   In prosecution for larceny from a store, tried without a jury, Supreme Court is unable to say trial judge was in error in finding defendant's guilt proven beyond a reasonable doubt (Act No. 328, § 360, Pub. Acts 1931).

5. SAME—LARCENY FROM STORE—CROSS-EXAMINATION—IDENTIFICATION OF MONEY.
   Cross-examination of complaining witness in prosecution for larceny from a store, tried without a jury, *held*, not to have been unduly restricted where trial judge announced finding of guilt on basis of identification of some silver dollars other than one upon which defendant's counsel was cross-examining complaining witness (Act No. 328, § 360, Pub. Acts 1931).

6. SAME—LARCENY FROM STORE—CROSS-EXAMINATION—NEW TRIAL.
   Defendant in nonjury prosecution for larceny from a store was not in a position, on appeal, to complain of termination of trial without defendant having rested his case where defend-

ant's counsel did not advise trial court of desire to offer further testimony before case was finally submitted and no complaint was made as to restriction of cross-examination or as to termination of trial in motion for new trial (Act No. 328, § 360, Pub. Acts 1931).

Appeal from Recorder's Court for the City of Detroit; Stein (Christopher E.), J. Submitted June 13, 1946. (Docket No. 62, Calendar No. 43,272.) Decided September 11, 1946. Rehearing denied October 18, 1946.

Joseph Franczyk was convicted of larceny from a store. Affirmed.

*Roman V. Ceglowski* and *Harold Helper,* for appellant.

*John R. Dethmers,* Attorney General, *Edmund E. Shepherd,* Solicitor General, *Gerald K. O'Brien,* Prosecuting Attorney, and *Michael A. Guest,* Assistant Prosecuting Attorney, for the people.

NORTH, J. Joseph Franczyk, on trial in the recorder's court of Detroit without a jury, was charged and convicted of larceny from a store under section 360 of the Michigan penal code (Act No. 328, § 360, Pub. Acts 1931 [Comp. Laws Supp. 1940, § 17115–360, Stat. Ann. § 28.592]). Sentence was imposed and he has appealed. He presents the following questions: (1) Is there any evidence at all that defendant committed larceny? (2) Is the finding of guilt against the great weight of evidence? (3) Did the trial court erroneously restrict defendant's cross-examination of the complaining witness on the identification of the evidence?

During the night of September 28, 1944, the Detroit drugstore of the complaining witness, Henry Tyszka, was entered through a broken window and

upwards of $600 was stolen. The money consisted of bills and silver dollars. Tyszka testified as follows:

"I had some of the money stuck away in back of the merchandise drawers. I have one of the merchandise drawers that I use for American Express money, it has to be kept separate, and that was taken too. * * * There were 25 silver dollars in the American Express drawer. When the silver dollars come in I put them on the side; I do not spend them; I save them. Those silver dollars had been there quite a while and once in a while I looked at them. I remember some distinguishing marks on those silver dollars and since that time I have seen and recognized some of them; it was in the court room downstairs in the examination in this case. I was shown certain silver dollars and I picked them out.

"I know Joseph Franczyk and see him in Court. He used to come in and I used to cash his check about a couple of years back, and he used to work in the packing house about a block away from the store. He has lived in the neighborhood and I have done business with him. He has been a customer of mine for some time. I knew him and he knew me."

A week after Tyszka's store was broken into Franczyk was taken into custody. His arrest was incident to some trouble at the packing house where he had worked for nine years. Soon after his arrest and upon being questioned by police officers about his having silver money defendant told the officers he had been saving silver dollars and that he had some in his car and where the money was in the car. Thereupon the officers went to defendant's place of residence and searched his automobile. The officer testified:

"My search revealed, on the right hand side of the car in the front seat up in the cowl between the body

and the upholstering of the car it had been loosened
and in looking in there we found that bag (which be-
longed to defendant) with 25 silver dollars in it.
That was people's exhibit No. 1. It was concealed
in between the metal body and the upholstering. It
was loose and you could just stick your hand in
there.

"I don't recollect whether he (defendant) told me
about those silver dollars when I talked to him at
first. When I talked to him after I got back to the
station he stated that he had a hobby of saving sil-
ver dollars. We asked him why he hid them in the
lining of his automobile and he stated he was hav-
ing trouble with his wife and she wouldn't give him
any money, so he snuck those silver dollars out of
the house and kept them in the lining of his car.
That is all he had to say about it.

"He told us that the night of the breaking and
entering that he and two other boys (neither of
whom was a witness) had been out drinking and
they had stopped in a bar known as Johnnie's Bar,
and they met two girls there and they drove them
out to Royal Oak. That is the way he accounted for
his activities that night."

On cross-examination defendant testified: "The
morning that I pushed the car to Royal Oak (for a
woman who had met with an automobile accident)
I didn't get home until daylight. I don't know if
that was the night of September 28th and I told the
officers that I didn't know where I was that night."

As a witness for the prosecution Tyszka identified
as part of his collection several of the silver dollars
taken by the officer from defendant's automobile.
In identifying certain of the coins Tyszka testified:

"*Q.* * * * I ask you whether you recognize any
of it (Exhibit 1, the 25 silver dollars)?
"*A.* This is one with that nick. (Indicating.)
"*Q.* You remember the nick on it?

"*A.*   That is right.

"*Q.*   What sort of a nick was it?

"*A.*   It was on the face and side to the right. * * * And this is one I remember; this was one of the older types, too, that came in, in brand new condition. (Indicating.) And I got this one here with the scratches around the eye. (Indicating.)

"*Q.*   Do you remember that one in particular as having been in your store when you locked up that night?

"*A.*   That is right, and I had one here that was all 8's, 1888, I remember this one; and this one here I remember had a nick on the face side and there was a black spot underneath, and this one I don't remember; that is one of the others. (Indicating.)

"*Q.*   And you don't remember in particular any of the rest of these particular silver dollars?

"*A.*   No."

The clerk in the Tyszka drugstore, Arthur Dombrowski, as a witness for the people, testified:

"Mr. Tyszka closed the store. That night (September 28, 1944) I did not have keys to re-enter. Mr. Tyszka opened the store the following morning. I did not re-enter the store after it was closed that night; Mr. Tyszka was the only one that had the keys. * * * There were some silver dollars on the premises when I left the store and they were kept in the American Express drawer. I don't know how many were there. I looked at those silver dollars and I became familiar with one of them. I did not see those silver dollars or any of them after that day. * * *

"*Q.*   I will show you some silver dollars, part of people's exhibit No. 1, and ask you whether you have ever seen any of them before?

"*A.*   This is the only one I can identify because of the cut on the side. (Indicating.)

"*Q.*   Because of the cut on the side?

"*A.*   Yes, sir.

"*Q.* You are familiar with that dollar and that is one of the dollars that was in the place of business when you left, is that correct?

"*A.* Yes, sir."

Defendant's testimony was corroborated in substance by that of his wife and brother. This testimony was to the effect that defendant was in the habit of collecting silver dollars, that he had received some from his brother, and that one time he had at his home 35 such coins, but that he had spent 10 of them, leaving 25. Defendant testified that he did not break into the drugstore and that he knew nothing about the theft of the money until he was told about it the day after his arrest; that the officers asked him if he had any silver coins and that he gave them the information hereinbefore set forth; that he had "started to pick up silver dollars when I first started to work at the packing company (9 years previously);" that his wife "wanted to save the silver dollars;" that he turned all his money over to his wife and when he needed money he went to his wife for it. Defendant further testified: "I was out drinking pretty near every night but I did not take my wife with me. She didn't like the idea of my drinking;" that on the night of the alleged offense defendant's wife refused to give him money and he thereupon took their collection of 25 silver dollars and threatened to "cash them in," although he did not intend to do so but thought that would induce his wife to give him some money. Defendant also testified:

"I had those silver dollars in the car just one night. The night before I was picked up was when I took them, and the next morning I didn't have a chance to get them out of the car because I never got to my car. I can't identify five silver dollars contained in people's exhibit No. 1 because I never

examined my dollars that close. * * * When the police officers asked me at the station where I had been that night, September 28, 1944, I told them I 'didn't know.''

In the face of the record, from which we deem it unnecessary to quote further, appellant's first question: "Is there any evidence at all in the record that defendant committed larceny," must be answered in the affirmative.

While appellant's second question reads: "Is the finding of guilt against the great weight of evidence," the true test in criminal cases is this: Was the guilt of the accused proven beyond a reasonable doubt? As commonly happens in trials of criminal cases, so in the instant case, there is testimony pro and con on the all-controlling issue of defendant's guilt. Hence the matter of credibility is quite decisive. As has often been said, the trial judge who sees and hears each of the witnesses and is cognizant of the attitude of each witness is much better qualified to pass upon credibility than a reviewing court. It is obvious that the testimony in behalf of this defendant was of such a character that it might readily have been framed if there was a disposition to do so, and further, that each witness (defendant's wife and his brother) who testified for defendant had a personal interest in the outcome of this prosecution. Careful review of this record brings the conclusion that we cannot say the trial judge was in error in finding defendant's guilt proven beyond a reasonable doubt.

The remaining question is whether prejudicial error resulted from the trial judge's restriction of the cross-examination of the complaining witness. On direct examination this witness purported to identify one of the coins by its date. "That is right, I had one here that was all 8's, 1888, I remember this

one.'' The witness testified he could not identify all of the 25 silver dollars, but just a limited number ''because of certain nicks or marks.'' Defendant's counsel sought to cross-examine this witness further about marks on the 1888 coin, and at the same time showing him another silver dollar dated 1888 (but not introduced in evidence) to ascertain if the witness could distinguish between the two coins. This phase of the record is as follows:

''Q. Can you show me where the mark is on this one? (Indicating.)

''A. That was the one with the 8's, 1888.

''Q. With all the 8's?

''A. That is right.

''Q. Take a good look at it.

''A. 1888.

''Q. And that is the coin?

''A. I had an 1888 here, yes, sir.

''Q. And that is your coin?

''A. I had an 1888, I remember that.

''The Court: Well, he has identified them. I don't care so much. There may be other 1888's but he has identified the other ones and the identification was quite clear. He has told where the marks were on the eye and the other marks on the dollars.''

(Continuing the cross-examination.)

''Q. Can you tell which one of these 1888's are yours? * * * I am trying to have him identify them.

''The Court: Have you got two 1888's?

''Mr. Ceglowski: We have two 1888's. * * *

''The Court: Well, I say there is more than one 1888. * * *

''The Court: I don't care so much about the 1888. These marks on the others are what count.''

Thereupon the trial court announced that he found defendant guilty, saying ''I am satisfied beyond a reasonable doubt of his guilt, because there

is a positive identification here of this money and he had it in his possession with the other money that has been offered here, the other silver coins." It is asserted in appellant's brief that: "Abruptly the court terminated proceedings without justification and without waiting for defendant to complete his cross-examination or to rest his case."

The fair construction of this record leads to the conclusion that since the trial court announced that he did not rely particularly upon the identification of the 1888 silver dollar but rather upon the identification of others of the coins, the cross-examination was not unduly restricted. Appellant is not in a position to complain that the court terminated the trial without defendant having rested his case. The testimony above quoted was cross-examination of the complaining witness who was recalled for further examination at what was evidently the conclusion of the case, and more important is the fact that counsel did not advise the trial court that he desired to offer further testimony before the case was finally submitted. Had he done so, without a doubt the court would have entertained further proofs. Not having so advised the trial court, appellant cannot be heard to complain on this appeal. While not of controlling importance, it may be noted that in defendant's motion for a new trial, which was denied, no complaint was made that the cross-examination was unduly restricted or that the trial was terminated before defendant had formally rested his case. We do not find prejudicial error in this incident of this nonjury trial.

The conviction and sentence of the trial court are affirmed. Remanded for execution of sentence.

BUTZEL, C. J., and CARR, SHARPE, BOYLES, and REID, JJ., concurred. BUSHNELL, J., did not sit. STARR, J., took no part in the decision of this case.