PEOPLE v FELL

1. CRIMINAL LAW—EVIDENCE—INSUFFICIENCY OF EVIDENCE—REASONA-
   BLE DOUBT—APPEAL AND ERROR.

   A criminal conviction will be overturned for insufficiency of the
   presented evidence only where that evidence could not support
   a finding of guilt beyond a reasonable doubt; an appellate court
   is reluctant to overturn the judgment of the trier of fact and
   substitute its judgment, which must necessarily be based on an
   inadequate description of the factors which lead the trier of
   fact to reach its decision.

2. EVIDENCE—HEARSAY—ASSERTED MATTERS—TRUTH—CREDIBILITY—
   ADMISSIBILITY—ACCURACY—RIGHT OF CONFRONTATION.

   Hearsay evidence is testimony in court of a statement made out
   of court, the statement being offered as an assertion to show
   the truth of the matters asserted therein, and thus resting for
   its value upon the credibility of the out-of-court asserter; while
   such evidence is generally inadmissable because the defendant
   is denied the right of cross-examination, the nature of the
   declaration and the circumstances of its making may create the
   substantial likelihood of an accurate report of the hearsay
   assertion, and where there exists reasonable assurance that
   cross-examination would be unavailing, hearsay may be admit-
   ted without violating the confrontation right in criminal cases.

3. CRIMINAL LAW—EVIDENCE—HEARSAY—RIGHT OF CONFRONTATION—
   FAIR TRIAL—UNRELATED CRIMES—PROBATIVE VALUE—DIVER-
   SION OF JURY.

   The nature and impact of a hearsay statement which goes to the
   very fairness of a defendant's trial must be examined in light of
   its effect both on the defendant's right of confrontation and his
   right to a fair trial, and hearsay evidence of a subsequent
   unrelated crime which had no probative value to prove an

REFERENCES FOR POINTS IN HEADNOTES

[1, 7] 5 Am Jur 2d, Appeal and Error §§ 821, 838.

[2–6] 29 Am Jur 2d, Evidence §§ 493–497.

    30 Am Jur 2d, Evidence §§ 1094, 1103.

    Consideration, in determining facts, of inadmissible hearsay evi-
   dence introduced without objection. 79 ALR2d 890.

alleged larceny at a gas station and which only served to divert the trier of fact should not have been admitted at a trial for the larceny.

4. Criminal Law—Evidence—Prior Convictions—Admissibility—Credibility—Probative Value.

Evidence of a prior conviction of the defendant may be admissible to impeach his credibility, but the general rule is that evidence tending to show the commission of other criminal offenses by the defendant is inadmissible on the issue of his guilt or innocence of the offense charged unless the probative value of such evidence outweighs its disadvantages, such as where the people seek to use such evidence to show the defendant's motive, intent, the absence of mistake or accident on his part or the defendant's scheme, plan or some system in doing the act in question.

5. Evidence—Improper Admission—Reversible Error—Standard of Review—Harm—Judicial Process—Reasonable Doubt—Statutes—Court Rules.

The Court of Appeals may consider the fact that a trial court sitting without a jury is less likely to be prejudiced by the erroneous admission of improper evidence but the standard of review remains whether the admission of evidence is inconsistent with substantial justice, or whether it has resulted in a miscarriage of justice, or whether the error is so offensive to the maintenance of a sound judicial process that it never can be regarded as harmless or, if not so basic, whether the court can declare a belief that the error was harmless 'beyond a reasonable doubt (MCLA 769.26, GCR 1963, 529.1).

6. Larceny—Evidence—Unrelated Crimes—Right of Confrontation—Prejudice—Trustworthiness.

A statement by a farmer to an investigating police officer concerning an attempted larceny was inadmissible as hearsay in the trial of a defendant for an unrelated larceny where the farmer was not made available for cross-examination, the nature of the hearsay was highly prejudicial, the circumstances under which it was given to the deputy gave no assurance that the farmer's statement was trustworthy and cross-examination may well have shown the statement was thoughtlessly made and without basis in fact.

7. Appeal and Error—Manifest Unjustice—Prejudice—Fair Trial.

It is manifestly unjust to let stand a conviction preceded by error

so prejudicial that it cannot be said with assurance that the defendant received a fair trial.

Appeal from Eaton, Willard L. Mikesell, J. Submitted October 16, 1975, at Grand Rapids. (Docket No. 21826.) Decided November 13, 1975.

John E. Fell, Jr. was convicted of larceny in a building. Defendant appeals. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *David L. Smith,* Prosecuting Attorney, and *Chester S. Sugierski, Jr.,* Assistant Prosecuting Attorney, for the people.

*Roger L. Wotila,* Assistant State Appellate Defender, for defendant.

Before: ALLEN, P. J., and DANHOF and M. F. CAVANAGH, JJ.

DANHOF, J. On August 2, 1974, John Edward Fell, Jr. was found guilty by the trial court, sitting without a jury, of larceny in a building. MCLA 750.360; MSA 28.592. He was sentenced to a term of a minimum of 2 years to a maximum of 4 years in prison on August 15, 1974.

On March 15, 1974, the defendant and his stepbrother drove into a gas station at approximately 6:30 p.m. A seventeen-year-old man was the only attendant at the gas station that night.

The gas station building was divided into two rooms, an outer room referred to as the "salesroom" and an inner room referred to as the "backroom". The backroom could only be entered through a door from the salesroom. The cash proceeds were kept in the backroom in a cabinet with a broken lock.

After the attendant put approximately $1 worth of gas into the defendant's car, the defendant and his step-brother asked the attendant if he would like to purchase a radio and a portable bar from them. Exactly where the ensuing discussion was carried on was disputed, but the attendant stated none of the sale took place in the backroom. However, the attendant did go into the backroom to get the money to purchase the radio and a map of the Detroit area for the defendant. He testified that he had shut the door securely upon leaving the backroom, but that he had not locked the door. The attendant then waited on another customer outside the building. Upon returning to the building, the attendant stated he observed the defendant leaving the backroom carrying two maps. Thereafter, he waited on yet another customer before he noticed two $20 bills missing.

The attendant testified that he had counted the number of $20 bills just ten minutes before the defendant and his step-brother had driven into the station. He stated there were five $20 bills at that time. However, the testimony of the attendant was not clear on the total amount of money in the cabinet nor on whether the attendant had carried any money on his person.

The defendant was later arrested at a farm between 9 and 9:30 p.m. on the same date by a deputy from the sheriff's department, who had been given the license number of the defendant's car by the gas station attendant. At the farm, the deputy found the farmer holding a shotgun on the defendant and his step-brother. At the trial, the prosecutor elicited the following from the deputy:

"*Q.* I see. Were there any other people around in that area that you could recognize besides the man with the gun?

"*A.* No, sir.

"*Q.* What happened then?

"*A.* I got out of the car and was advised by the man holding the shotgun that—

"*Mr. Hofman [defense counsel]:* I'll object to anything that the man with the shotgun said on the basis that it's hearsay.

"*The Court:* Objection overruled. It's not hearsay. Proceed.

"*The Witness:* I was advised by him that he was the owner of the property, adjoining property and that this Mercury had pulled in his driveway and was acting very suspiciously and he was concerned that they were attempting a larceny."

The deputy was later recalled for further testimony related to an attempted larceny at the farm. The farmer was not present at the trial.

The first issue raised on appeal is whether there was sufficient evidence to support the conviction of the defendant.

*People v Matthews,* 53 Mich App 232, 235–236; 218 NW2d 838 (1974) stated:

"The evidence is insufficient if it could not support a finding of guilt beyond a reasonable doubt. *People v Williams,* 368 Mich 494; 118 NW2d 391 (1962)."

See also *People v Palmer,* 392 Mich 370, 376; 220 NW2d 393 (1974).

As to the evidence presented to the trial court, *People v Stewart,* 36 Mich App 93, 98; 193 NW2d 184 (1971), *lv den,* 386 Mich 775 (1971), stated:

"When an appellate court is confronted with a challenge to the judgment of the trier of the facts, it will not easily be moved to overturn the judgment below. The trier of the facts, be it judge or jury, has had the opportunity to listen to the witnesses and observe their

demeanor; he has had the opportunity to observe and evaluate the plethora of subjective and objective factors which together influence his opinion of the credibility of the witnesses. These factors do not survive in the stenographic transcription, we merely have a record of the words spoken at trial—an incomplete record at best. For this reason, an appellate court is reluctant to overturn the judgment of the trier of fact and substitute its judgment, which must necessarily be based on an inadequate description of the factors which lead the trier of fact to reach its decision. *People v Franczyk,* 315 Mich 384 [24 NW2d 87] (1946); *People v Panknin,* 4 Mich App 19 [143 NW2d 806] (1966)."

A review of the record indicates that the defendant's conviction is based almost entirely on the testimony of the gas station attendant. There were no eyewitnesses to an actual taking of any money. In fact, all the evidence was circumstantial. Even this evidence was very limited. None of the alleged missing money was even found on the defendant. The evidence became a matter of who to believe. As stated in *People v Stewart,* the trial court was in the unique position of being able to study the demeanor of the witnesses, while this Court on appeal can only look at the printed words of the transcript. A careful reading of the transcript does reveal there is sufficient evidence to support a finding of guilt beyond a reasonable doubt if due weight is given to the testimony of the attendant and the testimony of the defendant is disbelieved. Therefore, in accord with *People v Matthews, supra,* the finding of the trial court will not be disturbed on the ground that there was insufficient evidence to support the conviction.

The second issue raised on appeal is whether the admission of hearsay testimony relating to an alleged larceny by the defendant subsequent to the crime charged constituted reversible error.

The Court in *People v George Jones,* 48 Mich
App 102, 106; 210 NW2d 145 (1973), defined hear-
say as follows:

"Hearsay evidence is testimony in court of a state-
ment made out of court, the statement being offered as
an assertion to show the truth of the matters asserted
therein, and thus resting for its value upon the credibil-
ity of the out-of-court asserter. McCormick, Evidence
(2d ed), § 246, p 584."

The reason that hearsay evidence is generally held
inadmissible is because the defendant is denied the
right of cross-examination. *People v Rea,* 38 Mich
App 141, 142; 195 NW2d 809 (1972), *lv den,* 388
Mich 795 (1972). Where hearsay testimony has
been admitted, *People v Kelley,* 32 Mich App 126,
146; 188 NW2d 654 (1971), stated:

"We think in each case the question whether a par-
ticular hearsay declaration may be admitted against an
accused without infringing the right of confrontation
depends, as we have said, on the nature of the declara-
tion and the circumstances of its making. Where such
circumstances, however, create the substantial likeli-
hood of an accurate report of the hearsay assertion and
where there exists reasonable assurance that cross-ex-
amination would be unavailing, hearsay may be admit-
ted without violating the confrontation right in crimi-
nal cases. In each case, the trial judge, outside the
hearing of the jury, should first test the proffered
declaration against these standards; if satisfied that the
high standards of probable trustworthiness have been
met, the court may then permit introduction of the
hearsay statement without running afoul of the Con-
frontation Clause."

When the deputy in the present case testified
that the owner had advised the deputy he was
"concerned that they were attempting a larceny",

that out-of-court statement was offered for the truth of the matter asserted therein. No other reason appears on the record for the admission of what the farmer said to the deputy. The statement was hearsay.

The statement does not appear to fall within the recognized exceptions to the hearsay rule. Perhaps the most likely exception with the farmer would have been the *res gestae* exception. An examination of this exception, though, indicates it would not apply either. See *People v Kelley, supra,* p 135.

As stated in the *Kelley* case, the determination of whether the defendant's right of confrontation has been violated depends upon the nature and circumstances of the hearsay. Here, the nature of the statement is to present evidence against the accused of a subsequent crime. While the statement was not objected to in the trial court on this basis, the nature and impact of the statement go to the very fairness of the defendant's trial. Thus, the hearsay statement must be examined in light of its effect both on the defendant's right of confrontation and right to a fair trial.

*People v DerMartzex,* 390 Mich 410, 413; 213 NW2d 97 (1973), states the general rule as to the admissibility of evidence of other crimes:

"While evidence of a prior conviction of a defendant may be admissible to impeach his credibility, the general rule is that evidence tending to show the commission of other criminal offenses by the defendant is inadmissible on the issue of his guilt or innocence of the offense charged.

"Evidence of other crimes is barred because it has been decided that whatever probative value such evidence has is outweighed by the disadvantage of diverting the trier of fact from an objective appraisal of the defendant's guilt or innocence. This rule of law guards against convicting an accused person because he is a

bad man. Barring such evidence prevents the trier of fact from inferring that the accused person is guilty of the charged offense because he has committed other similar acts or crimes.' *People v Matthews,* 17 Mich App 48, 52; 169 NW2d 138 (1969).

"It also has been decided, however, that the probative value of such evidence may outweigh the disadvantages where the people seek to use such evidence to show the defendant's 'motive, intent, the absence of, mistake or accident on his part, or the defendant's scheme, plan or system in the act, in question'. MCLA 768.27; MSA 28.1050."

An alleged attempted larceny at the farm does not relate to any of the factors set out in the statute. The record fails to indicate any relevance between an attempted larceny at the farm and the alleged larceny at the gas station. Besides its inadmissibility as hearsay, the statement should have been ruled inadmissible as evidence of a subsequent crime offered to show the defendant is a bad man and not offered to prove the defendant guilty of the crime charged.

The standard of review for error in the admission of evidence has been stated in various ways. GCR 1963, 529.1 indicates that a judgment may not be disturbed unless refusal to do so would be "inconsistent with substantial justice". MCLA 769.26; MSA 28.1096 states that no judgment shall be set aside or reversed for the improper admission of evidence unless, after an examination of the whole record, "it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice". As to the above provisions, *People v Robinson,* 386 Mich 551, 562–563; 194 NW2d 709 (1972), stated:

"We regard the strictures of MCLA 769.26 and GCR 1963, 529.1, as different articulations of the same idea:

appellate courts should not reverse a conviction unless the error was prejudicial. As stated in *Nichols, supra*— ' * * * the rule always in effect in Michigan, * * * has been and is that the question of reversal is controlled by determination of whether the error was prejudicial'.

"In determining prejudice in an error there are many considerations. As pointed out by former California Chief Justice Roger Traynor in his book *The Riddle of Harmless Error* (Ohio State Univ Press ed 1970), p 17:

" 'A large word like justice incorporated into a rule governing harmless error, compels an appellate court to concern itself not alone with a particular result but also with the very integrity of the judicial process.'

"The appropriate considerations are described in *People v Wichman,* 15 Mich App 110, 116 (1968):

" 'Where it is claimed that error is harmless two inquires are pertinent. First, is the error so offensive to the maintenance of a sound judicial process that it never can be regarded as harmless? See *People v Bigge,* 288 Mich 417, 421 (1939); *People v Berry,* 10 Mich App 469, 474 (1968); *People v Mosley,* 338 Mich 559, 566 (1953). See, also, *Chapman v California,* 386 US 18, 23– 24 (87 S Ct 824; 17 L Ed 2d 705) (1967), *reh den* 386 US 987 (87 S Ct 1283; 18 L Ed 2d 241). Second, if not so basic, can we declare a belief that the error was harmless beyond a reasonable doubt? See *People v Liggett,* 378 Mich 706, 716, 717 (1967); *Chapman v California, supra.' "

*People v Lundberg,* 364 Mich 596; 111 NW2d 809 (1961), indicates the standard of review may vary for a nonjury trial. In *Lundberg,* the trial court admitted evidence of the commission of subsequent unrelated crimes by the defendant. In ruling on the admission, the court stated, in 364 Mich at 603–604:

"Had such evidence been admitted in a trial to a jury, we would not hesitate to reverse a verdict of guilt. However, trial here having been to the court without a jury, and with due regard for the whole evidence of

guilt disclosed by this record, we do not believe the verdict would have been different than it was had such testimony been excluded."

However, the Court in *People v Ramsey,* 385 Mich 221; 187 NW2d 887 (1971), did find the trial court could be prejudiced by inadmissible evidence so as to require reversal of the trial court. The Court stated, in 385 Mich at 225–226:

"A trial judge, sitting as the trier of the facts, can assume no greater prerogatives than a jury if a jury were impanelled to determine the facts."

Further, *People v Jackson,* 391 Mich 323, 340, fn 17; 217 NW2d 22 (1974), indicated further dissatisfaction with the trial court receiving evidence inadmissible at the trial. In consideration of the above cases, it appears that the trial court sitting without a jury may be one factor to consider on review, but the basic standard of review as set forth in the court rule, the statute, and *People v Robinson, supra,* remains applicable.

In the present case, the statement by the farmer to the deputy concerning an attempted larceny was inadmissible under the hearsay rule of evidence. In line with *People v Kelley, supra,* the nature of the hearsay was that it was highly prejudicial. The circumstances under which it was given to the deputy gave no assurance the farmer's statement was trustworthy. Cross-examination may very well have shown the farmer's statement was thoughtlessly made and without a basis in fact. No reason has been shown why the farmer could not have been present in court. Therefore, admission of the statement violated the defendant's right to confront witnesses against him.

Moreover, even if cross-examination had been

available, the statement should not have been admitted into evidence to begin with. Evidence of a subsequent unrelated crime had no probative value to prove the alleged larceny at the gas station. The statement served only to divert the trier of fact. It cannot be concluded the error was harmless beyond a reasonable doubt. It is evident the statement introduced a subject that was given undue emphasis. On the witness stand, the defendant responded to the statement in an attempt to rebut it. Later, the deputy was recalled by the prosecution to further explain the incident at the farm. While the trial judge did not expressly make this evidence part of his finding to convict the defendant, he did question the defendant about the farm incident at the sentencing on August 15, 1974. Even under *People v Lundberg, supra,* the evidence of the defendant's guilt for the crime charged is so limited in the present case that it would not prevent reversal of the conviction because the trial court was sitting without a jury. The error was so prejudicial in this case that it cannot be said with assurance that the defendant received a fair trial. Under the standards set forth in *People v Robinson, supra,* it would be manifestly unjust to let the conviction stand where such prejudicial error preceded it.

Accordingly, the trial court is reversed and the case remanded for a new trial.