## PEOPLE v DERRICK SMITH

Docket No. 27739. Submitted November 8, 1978, at Detroit.—Decided December 8, 1978.

Derrick Smith was convicted of murder in the first degree in the perpetration of a robbery, Recorder's Court of Detroit, Elvin L. Davenport, J. The defendant appeals, alleging, among other things, that 1) he was deprived of his right to a fair trial and of his right to confront the witnesses against him when the trial court admitted into evidence, over defendant's objection, hearsay evidence that the two persons whom the defendant claimed committed the offense were incarcerated in Georgia at the time that the victim was killed, 2) the trial court erred in not instructing the jury, *sua sponte,* on the included offense of second-degree murder, 3) the trial judge erred when he instructed the jury that the element of malice is imputed from the perpetration of the robbery, 4) the instruction to the jury on aiding and abetting was erroneous and misleading, and 5) the trial judge erred in ruling that the defendant could be impeached, if he took the stand in his own behalf, for the offense of "larceny from a building", an offense of which the defendant claims he was not convicted. *Held:*

1. The testimony of a police officer that the two persons, who the defendant claimed were the perpetrators of the offense, were incarcerated in Georgia at the time of the offense, was hearsay testimony and did not fit any of the exceptions to the hearsay rule. Since this testimony was neither merely cumulative nor corroborative of earlier testimony, it was not harmless error. Therefore the defendant's conviction is reversed and the matter remanded.

2. The trial court erred in failing to instruct the jury, *sua*

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 29 Am Jur 2d, Evidence §§ 493, 497.

[3] 30 Am Jur 2d, Evidence § 991.

[4, 5] 5 Am Jur 2d, Appeal and Error §§ 800, 801, 803.

[6] 40 Am Jur 2d, Homicide § 525.

[7] 40 Am Jur 2d, Homicide § 72.

*sponte,* on the lesser offense of second-degree murder. If there is a retrial such an instruction should be given.

3. The instruction to the jury that malice could be imputed from the perpetration of the robbery was improper. In event of retrial the judge should instruct the jury that the defendant can be convicted of first-degree felony murder only if the jury has found that the killing was done with malice.

4. The instructions on aiding and abetting were lacking in some areas and the trial court should use CJI 8:1:01 on retrial to avoid any confusion in the minds of the jurors.

5. The trial court did recognize that it had discretion to allow the defendant to be impeached if he elected to testify, by introducing a previous conviction for larceny in a building. However, on retrial the trial court must ascertain defendant's prior felony convictions, if any, before ruling on their admissibility.

Reversed and remanded.

1. EVIDENCE—HEARSAY—DEFINITION.

Hearsay evidence may be defined as that evidence offered in court of a statement made out of court to show the truth of matters asserted therein, and thus resting for its value upon the credibility of the out-of-court declarant.

2. EVIDENCE—HEARSAY RULE—JUSTIFICATION.

The principal justification for the rule of evidence prohibiting hearsay evidence is the lack of opportunity for the adversary to cross-examine the absent declarant whose out-of-court assertion is reported by the testifying witness.

3. EVIDENCE—HEARSAY RULE—OFFICIAL RECORDS.

Official records or documents properly authenticated must be produced in order for hearsay testimony, relating the contents of the records or documents, to qualify for the official records exception to the hearsay rule.

4. EVIDENCE—HEARSAY—CUMULATIVE TESTIMONY—CORROBORATIVE TESTIMONY—HARMLESS ERROR.

The erroneous admission of hearsay testimony is harmless error where such testimony is merely cumulative and corroborative of earlier testimony.

5. EVIDENCE—HEARSAY—MISCARRIAGE OF JUSTICE.

The admission of a prosecution witness's hearsay testimony that is not merely cumulative or corroborative of earlier testimony may result in a miscarriage of justice.

6. HOMICIDE—FIRST-DEGREE MURDER—INSTRUCTIONS TO JURY—FEL-
ONY-MURDER—SECOND-DEGREE MURDER—INCLUDED OFFENSES.

   The trial court is required to instruct the jury *sua sponte,* even
   over objection, on the included offense of second-degree murder
   in every trial for first-degree murder, including felony-murder.

7. HOMICIDE—FELONY-MURDER—ELEMENTS—MURDER—MALICE—STAT-
UTE.

   To convict a defendant of felony-murder, the prosecution must
   establish 1) a homicide, 2) that the homicide is murder, and 3)
   that the murder occurred in the perpetration or attempt to
   perpetrate one of the felonies enumerated in the first-degree
   murder statute; thus, before a party may be convicted under
   the first-degree murder statute, a common-law murder must be
   proved (MCL 750.316; MSA 28.548).

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Michael R. Mueller,* Director, Prosecutor's Repeat Offender's Bureau, and *Raymond P. Walsh,* Assistant Prosecuting Attorney, for the people.

*Carl Ziemba,* for defendant on appeal.

Before: ALLEN, P.J., and R. M. MAHER and J. E. TOWNSEND,* JJ.

R. M. MAHER, J. Defendant was convicted of murder in the first degree in the perpetration of a robbery contrary to MCL 750.316; MSA 28.548. He was sentenced to life imprisonment and appeals as of right.

The killing of one Lawrence Newhouse occurred on August 3, 1974. Blanche Foster, a neighbor of the deceased, testified that she had known the deceased for 40 years and that he lived in a house on Steel Street in the City of Detroit across the alley from the witness. On August 2, 1974, she saw

---

* Circuit judge, sitting on the Court of Appeals by assignment.

the deceased in his home at 3:30 p.m. and later at 6:30 p.m.; the deceased was well. On the following day, the witness went to the deceased's home at 9:15 a.m., saw him lying on the glider on the front porch, and called the police.

The first officers to arrive on the scene found Mr. Newhouse dead on the glider with wounds to the head. The house—especially the bedroom—was in disarray. In the bedroom, the mattress was pulled askew, dresser drawers were pulled out and some loose change was lying on the floor. Although the deceased was fully clothed, his pants were unzipped and one pocket was pulled out. Ms. Foster testified that, upon entering the deceased's home after the police arrived, she noticed that the television set which had been there the day before was now missing, along with the TV stand. She also testified that she did Mr. Newhouse's banking, depositing the pension, social security and dividend checks which he regularly received. She testified as well that the deceased kept some money in the house.

Medical testimony established that the deceased had suffered deep injuries to the head and face which were caused by the impact of a blunt object, possibly a hammer. Cause of death was destruction of the brain as a result of the injuries to the head.

Fred Davis, a Detroit police lieutenant assigned to homicide, testified that on August 29, 1975, at about 10:45 a.m., the defendant walked into the homicide office. Lt. Davis was introduced to the defendant by Sgt. Lisbara who said that the defendant was not in custody at that time. Lt. Davis then took a statement from the defendant which the defendant signed. The defendant was not a suspect in the case prior to making this statement. Defendant objected to the admission of the state-

ment, on grounds that it was given a year and 26 days after the alleged offense, and that the statement did not come within any exception to the hearsay rule. The statement, however, was admitted and read into the record.

In the statement, the defendant said that Donnie Bolden and another "guy" who was probably his brother came to the defendant's house at 11645 Appoline and asked the defendant if he knew of a "rip". Defendant told them about the deceased. The defendant first stated that he went with them and pointed out the house, but then immediately stated: "No, on second thought, I didn't go with them." The Bolden brothers then left, returning 45 minutes later with a floor model TV in their truck. The brothers then drove away, but returned about an hour later and discussed going back to the home of the deceased to get money. The brothers again left together. They returned about a half hour later, saying that they didn't get any money but that Donnie hit the deceased with a hammer. The first time the two brothers went to the deceased's home, he was asleep; the second time, the deceased was on the enclosed porch. The defendant indicated to Lt. Davis that he was telling about the homicide because he needed some help himself.

After taking this statement from the defendant, Lt. Davis called Sgt. Bemke, who was in charge of the case, and asked the sergeant to come to his office. When Sgt. Bemke arrived, Lt. Davis gave him the signed written statement. Sgt. Bemke then advised defendant of his constitutional rights and took a further statement from him. Although defendant signed the constitutional rights form, he refused to sign the second statement taken by Sgt. Bemke. The prosecution moved to admit defend-

ant's second statement along with the notification of rights form. Defendant objected to the admission of the second statement, claiming that there was no showing that the statement was made by the defendant because the defendant did not sign it. The court, after a *Walker* hearing,[1] found the statement voluntary and ruled it admissible.

Sgt. Bemke then read defendant's second statement into the record. In this statement, defendant said that he accompanied the Bolden brothers to the home of the deceased and found the deceased in bed. Donnie Bolden carried out the TV from the living room, and defendant carried out the TV stand. The three then went to defendant's house. The Bolden brothers left, then returned about 45 minutes later and asked defendant if he knew where they could get cash. Defendant told them that he didn't know of any place. Donnie Bolden then stated that the deceased must have money because he should have received a Social Security check. The two brothers then went back to the deceased's house, but defendant stayed home.

When the Bolden brothers came back about a half hour later, Donnie Bolden said that the deceased had no money and that he had to "bust" the deceased "upside the head" to get him to tell where any money was.

The statement went on to say that about a month earlier defendant and a friend broke into the deceased's house and took a TV, the deceased's wallet and his ring with two diamonds. After being asked whether there was anything else he wanted to say, the defendant stated that he did go with the Bolden brothers to the deceased's home the second time, that the deceased was on the swing

[1] *People v Walker (On Rehearing),* 374 Mich 331; 132 NW2d 87 (1965).

and that Donnie Bolden looked through the deceased's pants for money and then hit the deceased in the head with a hammer.

After reading the statement, Sgt. Bemke then testified that he talked to Robert Bolden. Based upon this conversation, Sgt. Bemke contacted the sheriff's department in Catusa, Alabama, and Chapman, Georgia. Over the defendant's objection that it was hearsay, Sgt. Bemke testified that both Bolden brothers were in custody on August 3, 1974, in Chapman, Georgia.

The defendant did not adduce any evidence and the jury returned a verdict of guilty.

Defendant has raised 12 separate issues on appeal. We find one which clearly requires reversal. Four other issues constitute error and require comment, while the remainder are without merit.

We reverse defendant's conviction because we are convinced that he was deprived of his right to a fair trial and of his right to confront the witnesses against him when the trial court admitted into evidence, over defendant's objection, hearsay evidence that the Bolden brothers were incarcerated in Georgia at the time the victim was killed.

The charges against the defendant were based upon his alleged second statement of August 29, 1975, to Sgt. Bemke, wherein the defendant revealed detailed information relating to the murder and stated that Donnie Bolden hit the deceased in the head with a hammer. It was the prosecution's theory that the portion of the defendant's statement concerning the Bolden brothers was false, and that only the defendant, based upon his detailed knowledge of the incident, could have murdered the victim.

In support of this theory, the prosecution adduced testimony from Sgt. Bemke as to informa-

tion he obtained concerning the whereabouts of the Bolden brothers on the day of the murder. Defense counsel objected, stating, "It's hearsay in the rankest form, your Honor", and the following took place:

"MR. WOUCZYNA *[The Prosecutor]:* Thank you, your Honor.

"Q By Mr. Wouczyna: Were you able to obtain any information about the Bolden brothers concerning the dates of August 2nd and 3rd of 1974?

"A *[By Sgt. Bemke]:* Yes. They [Sheriff's Department in Chapman, Georgia] send *[sic]* me records and photographs of the Bolden brothers and confirmed the fact they were both in custody on August 3rd [the day of the killing] in Chapman Georgia.

"THE COURT: Well—

"MR. PERSONS *[The Defense Counsel]:* Where are those records?

"THE COURT: Well, I suppose if you press it he'll let you see them."

No records relating to the Bolden brothers' incarceration were admitted into evidence.

This Court has defined hearsay and has commented on the purpose for its inadmissibility as follows:

"Hearsay evidence may be defined as that evidence offered in court of a statement made out of court to show the truth of matters asserted therein, and thus resting for its value upon the credibility of the out-of-court declarant. See McCormick, The Law of Evidence (2d ed), § 246, p 584. Application of the rule prohibiting such evidence reveals its principal justification is the lack of opportunity for the adversary to cross-examine the absent declarant whose out-of-court assertion is reported by the testifying witness." *People v Solomon,* 47 Mich App 208, 212–213; 209 NW2d 257 (1973), *rev'd on other grounds,* 391 Mich 767 (1974).

Clearly, in the case before us, the proffered testimony was offered to prove the truth of the matter asserted therein and was thus hearsay. In order for such testimony to qualify for the official records exception to the hearsay rule, the official record or document, properly authenticated, must be produced. 30 Am Jur 2d, Evidence, § 962, p 90. As no documents or records were offered into evidence, the trial court's admission of Sgt. Bemke's hearsay testimony over the defendant's objection was erroneous.

We must now determine whether the admission of the hearsay testimony was harmless, or whether it resulted in a miscarriage of justice requiring reversal of defendant's conviction, see MCL 769.26; MSA 28.1096. The erroneous admission of hearsay testimony is harmless error where such testimony is merely cumulative and corroborative of earlier testimony, *People v Vargas,* 50 Mich App 738; 213 NW2d 848 (1973), *People v Harrison,* 49 Mich App 546; 212 NW2d 278 (1973), *People v Dykes,* 37 Mich App 555; 195 NW2d 14 (1972). In the present case, the only testimony relating to the Bolden brothers' incarceration on the date of the murder was the inadmissible hearsay testimony of Sgt. Bemke. Since the hearsay testimony was not cumulative, it cannot be viewed as harmless error.

In cases similar to the one before us, this Court has not hesitated in finding such testimony amounted to a miscarriage of justice and we find no reason to deviate from this policy. See *People v Fell,* 65 Mich App 543; 237 NW2d 550 (1975), and *People v Logan,* 17 Mich App 363; 169 NW2d 504 (1969).

For the reasons stated, the defendant's conviction is reversed. Given the possibility of another trial, we will briefly comment on four other issues raised on appeal.

Defendant did not request and the trial judge did not instruct on the lesser included offense of murder in the second degree. In *People v Jenkins,* 395 Mich 440, 442–443; 236 NW2d 503 (1975), the Court held:

"[I]n every trial for first-degree murder, including felony murder, the trial court is required to instruct the jury *sua sponte* and even over objection, on the lesser included offense of second-degree murder.

*        *        *

"This decision shall apply to this case and to all cases tried after January 1, 1976."

The trial of the case at bar commenced on December 29, 1975, but the charge to the jury was delivered on January 2, 1976. We believe that since the *Jenkins* rule deals with mandatory jury instructions, the time that the instructions are given is the operative point in time for the applicability of this rule. In any event, on retrial the instruction must be given.

Next defendant argues that the trial judge erred when he instructed the jury that the element of malice is imputed from the perpetration of the initial robbery. We agree. Although various panels of this Court are split on this issue, we are inclined to follow the opinions in *People v Fountain,* 71 Mich App 491; 248 NW2d 589 (1976), and *People v Wright,* 80 Mich App 172; 262 NW2d 917 (1977). Thus on retrial the court should adhere to the following principle as laid down in *Wright, supra,* at 176.

"In order to convict a defendant of felony murder, the prosecution must establish (1) a homicide; (2) that the homicide is murder; and (3) that the murder occurred in the perpetration or attempt to perpetrate one of the

felonies enumerated in MCL 750.316; MSA 28.548. *People v Wimbush,* 45 Mich App 42; 205 NW2d 890 (1973), *People v Smith,* 55 Mich App 184; 222 NW2d 172 (1974). Thus, before a party may be convicted under the first-degree murder statute, a common law murder must be proved."

The second element as set forth by the *Wright* Court will require the trial judge to instruct the jury that defendant can be convicted of first-degree felony murder only if the jury has found the killing was done with malice.

Defendant asserts that the trial court's instruction on aiding and abetting was erroneous and misleading because there was no mention that the jury had to find a concert of action between defendant and the principal and no mention that defendant must have intended the commission of the crime at the time that aid was given. We find the instructions lacking in some areas and we direct the court, on retrial, to use CJI 8:1:01 to avoid any confusion in the minds of the jury.

Lastly, we find the trial court did recognize that it had discretion to allow the defendant to be impeached, if he had elected to testify, by introducing a previous conviction for larceny in a building. The problem is that defense counsel insisted that larceny in a building was only the original charge, not the conviction. On retrial we instruct the judge to ascertain defendant's prior felony convictions, if any, before ruling on their admissibility under *People v Jackson,* 391 Mich 323; 217 NW2d 22 (1974).

Reversed and remanded.